**Ronald and Linda TAMBE, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Otis BOWEN as Secretary of Health and Human Services, Cesar Perales as Commissioner of New York State Department of Social Services and W. Burton Richardson, as Director of the Monroe County Department of Social Services, Defendants.**

**No. CIV–85–0539T.**

United States District Court, W.D. New York.

June 23, 1987.

Monroe County Legal Assistance Corp., Edwin Lopez-Soto, of Counsel, Rochester, N.Y., for plaintiffs.

United States Attorney's Office (Rosemary G. Roberts, Asst. U.S. Atty., of counsel), Monroe County Dept. of Social Services (Milo I. Tomanovich, Chief Counsel), Attorney General of the State of N.Y. (Elizabeth J. McDonald, Asst. Atty. Gen., of counsel), Rochester, N.Y., for defendants.

## DECISION and ORDER

TELESCA, District Judge.

Plaintiffs and defendants in this case have cross moved for summary judgment and the plaintiffs have moved for class certification. For the reasons that follow I find that the Federal and State welfare regulations that forbid payments to correct admitted underpayments of welfare to families no longer eligible for public assistance violate 42 U.S.C. § 602(a)(22). Therefore I award plaintiffs summary judgment. Since the defendants have applied these policies to approximately 44 former public assistance recipients and would apply these policies to perhaps hundreds in the future, plaintiffs' motion for class certification is granted.

## BACKGROUND

### A. *Regarding Named Plaintiff Ronald Tambe*

The plaintiff Ronald Tambe decided to move back to the household with his wife and five-year old child in April of 1984. He made application to be added to his wife's public assistance grant but that application was denied by the Monroe County Department of Social Services because they claimed he failed to register with the Employment Services Division. Mr. Tambe requested a "fair hearing" to contest that denial which was not held until October 30, 1984. At the time the hearing was held, Mr. Tambe had found work and his family was no longer receiving public assistance benefits. The fair hearing decision which was not issued until March 13, 1985 stated that the welfare agency's denial of Mr. Tambe's request to be added to his wife's public assistance grant was incorrect. Although the fair hearing decision conceded that Mr. Tambe was wrongfully denied the benefits, application of the challenged Federal and State regulations providing that underpayments would only be corrected to those who were current recipients of public assistance barred relief. This hearing decision informed Mr. Tambe he would not receive any of the money due him unless he were to once again become a recipient of public assistance.

### B. *The Challenged Regulations*

In August, 1981 the Omnibus Budget and Reconciliation Act (OBRA) changed eligibility requirements in the Aid to Families with Dependent Children (AFDC). As amended by OBRA, 42 U.S.C. § 602(a)(22) provides (in pertinent part) that a state AFDC plan must:

> provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan....

The Secretary of Health and Human Services promulgated the challenged regulation, 45 CFR § 233.20(a)(13) to purportedly comply with OBRA. Section (ii) of these regulations concerns underpayments and provides in part:

> (ii) specify uniform statewide policies for prompt correction of any underpayments to current recipients and those who would be a current recipient if the error causing the underpayment had not occurred. (Underlining added to emphasize contested portion.)

States wishing to participate in the AFDC program and receive Federal matching payments must comply with Federal regulations. Soon after the passage of OBRA, New York State promulgated the following challenged regulation:

Local Social Services Districts shall correct any underpayments to current recipients, and to those who would be current recipients if the error causing the underpayment had not occurred, by making appropriate payments in each case within thirty (30) days after discovery of the underpayments. Such retroactive payments shall not be considered as income or as a resource in the month paid nor in the next following month. Judicial determinations which enjoin or declare invalid departmental policy do not create an underpayment.

18 NYCRR 352.31(f).

## DISCUSSION

The question to be decided is whether the State and Federal regulations denying reimbursement of acknowledged underpayments to former AFDC recipients, is consistent with 42 U.S.C. § 602(a)(22). For the reasons stated herein, I find that the State and Federal regulation denying former recipients their due clearly violates the requirement of 42 U.S.C. § 602(a)(22) which provides that "any" underpayment be corrected regardless of when that underpayment is determined.

Recently, the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) has held that: "When a Court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question of whether Congress has directly spoken to the precise question at issue. If the intent of the Congres is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (Footnote omitted) 104 S.Ct. at 2781–2782.

I find that the language of the statute is clear in providing that "all" necessary steps shall be taken to correct "any" overpayment or underpayment. This broad language is not tempered or constricted by any limitation whatsoever.

The effect of the application of state and federal regulations denying reimbursement to those welfare recipients who have been underpaid unless they are currently on welfare is clearly contrary to what Congress intended. Simply stated, if a mistake was made in calculating benefits resulting in the welfare recipient being underpaid, he is entitled to receive the difference even though he is not currently on welfare. The burden is always upon those administering the plan to see to it that the needy are paid what they are entitled to when they are entitled to it. If underpayment is not discovered until the recipient is off public assistance he should nonetheless be paid what he was originally entitled to. To hold otherwise, as the Government urges, will allow the Government to benefit from a forfeiture of welfare benefits to which the needy were entitled and ultimately to reward the Government for its mistakes. Congress never intended such a result nor would the Constitution permit it. Article V, U.S. Constitution. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

I agree with Chief Judge Robert F. Peckham of the Northern District of California who squarely addressed the same issue and held that, "[T]he language and the Congressional intent do not support the interpretation given the statute by the Secretary. The statute speaks in terms of 'any underpayment', and the Senate Finance Committee referred to corrections of underpayments, 'in all instances.'" *Edwards v. McMahon,* No. C–84–3441 (N.D.Calif., August 20, 1985) (appeal to Ninth Circuit pending). In *Edwards,* the Secretary enunciated the same policy rationale, specifically that their actions were justified by allocating scarce public resources to benefit only the most needy, and interpreting the most needy to be only those in current receipt of benefits. In his decision, at p. 16 Judge Peckham stated that although he found the Secretary's policy consideration to be compelling, "... it is outweighed by

the numerous policy considerations underlying the need for reimbursement of former recipients." There are several compelling reasons for not validating a policy that shortchanges people who have been found eligible for these very "barebones" subsistence dollars, that the responsible agencies refuse to pay. This policy would tend to encourage a social service agency to engage in budgetary belt tightening at an unconscionable cost to people already living below the poverty guidelines. Here, the fact that the plaintiff, his wife, and their child were evicted and forced to seek emergency housing, would seem to represent a likely consequence of any shortfall to a family barely surviving when the full payments are received. Any policy that would provide a reward or incentive for an agency to undergrant a client is shortsighted at best.

Finally, a policy to subsequently repay the wrongfully withheld benefits, conditioned upon people remaining recipients of public assistance or returning to public assistance, encourages dependence rather than independence.

The State defendant argues that this action is barred by the Eleventh Amendment to the United States Constitution, citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The plaintiffs point out in their brief that they do not seek monetary relief against the State defendant, but they ask that the State defendant be ordered to require the County Department of Social Services to make payments to class members. In *Holley v. Lavine*, 464 F.Supp. 718, 723 (W.D.N.Y.) *affirmed*, 605 F.2d 638 (2d Cir.1979) *cert. denied*, subnom. *Blum v. Holley*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), it was held that although the State defendant was shielded from damages by the Eleventh Amendment, the County defendant was nonetheless liable for the withheld AFDC payments. The County has not argued here that it is an arm of the State, for Eleventh Amendment purposes.

Plaintiff in his complaint has sought to bring this as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), "on behalf of himself and all other applicants for or recipients of public assistance in New York State who are or will be owed retroactive payment of benefits but whom will be denied those benefits because they are no longer current recipients." Plaintiffs' Complaint p. 2. ¶ 3. The State defendants submitted an affidavit with respect to the scope of the plaintiffs' proposed class, and at oral argument plaintiffs agreed to certify the class as AFDC recipients and applicants, not State charges, who are or will be owed retroactive payment of benefits but whom will be denied those benefits because they are no longer current recipients.

## CONCLUSION

The Court grants plaintiffs' motion for summary judgment and

A.  Certifies this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2),

B.  Declares that 45 CFR § 233.20(a)(13) and 18 NYCRR 352.31(f) violates 42 U.S.C. § 602(a)(22),

C.  Enjoins the defendants from refusing to make corrective payments to all AFDC public assistance applicants or recipients who have been undergranted in New York State since July, 1985,

D.  Defendant Perales is ordered to identify all class members who received fair hearing decisions denying the correction of underpayments from July, 1985 (the month of his answer to present). He is further ordered to notify the appropriate local welfare officials of their obligation to make these corrective payments,

E.  The County is ordered to pay the Tambes the benefits that were erroneously withheld from them.

ALL OF THE ABOVE IS SO ORDERED.