834 F.2d 796
 56 USLW 2375
 Helene EDWARDS; Christine Streicher Diamond, Plaintiffs/Appellees,
and
Helen Edwards; Christine Streicher Diamond; California
Coalition of Welfare Rights Organizations; Sharon
Lilly; Judith A. Tillings;
Plaintiffs-Intervenors/Appellees,
v.
Linda S. McMAHON, Director of the State Department of Social
Services; Department of Social Services, an agency of the
State of California; Michael Franchetti, Director of the
Department of Finance of the State of California; Dept. of
Finance, an Agency of the State of California;
Defendants/Counter-Claimants, Third-Party Plaintiffs,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Third-Party Defendant/Appellant.
 Nos. 85-2703, 85-2704, 85-2705 and 86-2398.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 15, 1987.
Decided Dec. 16, 1987.
 
 William Kanter and Al J. Daniel, Jr., Dept. of Justice, Washington, D.C., for defendant-third-party defendant/appellant.
 Elizabeth Arnold, Contra Costa Legal Aid, Richmond, Cal., Wendy Sones, Coalition of California Welfare Rights Organizations, Sacramento, Cal., and Edward Barnes and Juliet Gee, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiffs/appellees.
 John K. Van de Kamp, Atty. Gen., Asher Rubin, Deputy Atty. Gen., for state appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, SKOPIL and CANBY, Circuit Judges.
 SKOPIL, Circuit Judge:
 The issue in this case is whether the Secretary of Health and Human Services must make corrective payments to former recipients of benefits under the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. Secs. 601-615 (1985). The State of California and former AFDC recipients sought to compel such payments. The district court granted summary judgment in their favor and awarded attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412 (1985). We affirm the grant of summary judgment but reverse the attorney fees award.
 
 FACTS AND PROCEEDINGS BELOW
 
 1
 AFDC provides cash grants to needy children and their families. AFDC is based on a scheme of cooperative federalism; the federal government and the state jointly finance it. A state has the option of participating, but once it chooses to participate, its program must meet all federal requirements. 42 U.S.C. Sec. 602; see generally Heckler v. Turner, 470 U.S. 184, 189, 105 S.Ct. 1138, 1142, 84 L.Ed.2d 138 (1985).
 
 
 2
 In 1981 Congress enacted the Omnibus Budget Reconciliation Act (OBRA), Pub. L. No. 97-35, 95 Stat. 357. OBRA amended 42 U.S.C. Sec. 602 by adding subsection (a)(22). The interpretation of that subsection lies at the heart of this case. State agencies must
 
 
 3
 (22) ... promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan, and, in the case of--
 
 
 4
 (A) an overpayment to an individual who is a current recipient of such aid [including a current recipient whose overpayment occurred during a prior period of eligibility], recovery will be made ...;
 
 
 5
 (B) an overpayment to any individual who is no longer receiving aid under the plan, recovery shall be made ...; and
 
 
 6
 (C) an underpayment, the corrective payment shall be disregarded in determining the income of the family, and shall be disregarded in determining its resources in the month the corrective payment is made and in the following month....
 
 
 7
 42 U.S.C. Sec. 602(a)(22) (emphasis added). The subsection appears to require the correction of underpayments to both current and former recipients. Nevertheless, the Secretary issued a regulation restricting corrective payments to current recipients.[1] 45 C.F.R. Sec. 233.20(a)(13)(ii) (1986).
 
 
 8
 The Secretary's regulation had a harsh effect on individuals who were underpaid erroneously when they were AFDC recipients. Edwards and Diamond, the original plaintiffs in this case, are former AFDC recipients in California ("State") who were underpaid because of State errors. To buy clothing for her sons, Edwards was forced to charge items at department stores and paid finance charges on the outstanding balances. Among other things, her family did without haircuts. Diamond fell behind on her utility payments. The utility company threatened to shut off the gas and electricity. She had to walk two miles to work because she could not afford to repair her car. She also delayed getting married. The State agency ruled plaintiffs ineligible to receive corrective payments for the conceded underpayments because they were no longer current recipients.
 
 
 9
 Edwards and Diamond then sued the State in state court for recovery of AFDC benefits. They challenged state regulations based on the Secretary's regulation. The State filed a third party cross-complaint for declaratory and injunctive relief against the Secretary. The Secretary, as third party defendant, removed the action to federal district court pursuant to 28 U.S.C. Sec. 1442(a)(1) (1982).
 
 
 10
 In proceedings relevant to this appeal, plaintiffs and the State moved for summary judgment against the Secretary. The district court granted their motion, holding the Secretary's regulation inconsistent with section 602(a)(22).[2] The court enjoined the Secretary from enforcing the regulation in a manner that would deprive former AFDC recipients of corrective payments. Finally, it awarded $18,336.01 in attorney fees to plaintiffs under the EAJA. The Secretary appeals. He contends the district court erred in granting summary judgment and in awarding attorney fees.
 
 DISCUSSION
 I. Validity of Regulation
 
 11
 The Secretary argues that he can limit corrective payments to current recipients. He contends the district court failed to accord sufficient deference to his interpretation of the statute. The district court held the regulation inconsistent with the statute's language, legislative history, and purpose. Our review is de novo. Native Village of Stevens v. Smith, 770 F.2d 1486, 1487 (9th Cir.1985), cert. denied, 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986).
 
 
 12
 An agency's statutory construction is subject to a two-step review. "If the intent of Congress is clear, that is the end of the matter." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The "unambiguously expressed intent of Congress" controls. Id. at 843, 104 S.Ct. at 2781. "[I]nquiry into congressional intent encompasses both statutory language and legislative history." Washington Hosp. Center v. Bowen, 795 F.2d 139, 143 (D.C. Cir.1986). If the intent of Congress is unclear, the court must defer to a reasonable agency interpretation. Chevron U.S.A., 467 U.S. at 843-44, 104 S.Ct. at 2782.
 
 
 13
 We conclude that the intent of Congress is clear. "[W]e look first, as always, to the language of the statute." Turner, 470 U.S. at 193, 105 S.Ct. at 1144. Section 602(a)(22) requires state agencies to "promptly take all necessary steps to correct any overpayment or underpayment of aid...." (Emphasis added). "All" means every. "Any" means without restriction or limitation. The plain meaning of the statute could not be broader. Congress intended all underpayments to be corrected.
 
 
 14
 The legislative history of the statute buttresses that conclusion. Prior to the enactment of section 602(a)(22), no express statutory provision dealt with incorrect payments. Under a regulation first issued in 1973 and reissued with no changes until 1981, states had the option of recovering overpayments. If they decided to recover overpayments, they had to correct underpayments. 45 C.F.R. Sec. 233.20(a)(12)(ii) (1973). Corrective payments, however, were subject to four limitations. They only had to be made (1) to current recipients; (2) when the underpayment resulted from administrative error; (3) if the amount of payment exceeded administrative cost; and (4) for the twelve-month period preceding the month in which the underpayment was discovered. Id. Corrective payments were to be disregarded in determining continued eligibility. 45 C.F.R. Sec. 233.20(a)(12)(ii)(b). They were not considered a resource for the two-month period following payment and were never counted as income.[3] Id. In enacting section 602(a)(22), Congress unambiguously adopted only this last provision. See 42 U.S.C. Sec. 602(a)(22)(C). Congress otherwise rejected the Secretary's four limitations.
 
 
 15
 Congressional and executive reports make clear that rejection. The Senate Budget Committee noted that "[t]he Committee amendment would require States to correct overpayments and underpayments in all instances". S.Rep. No. 139, 97th Cong., 1st Sess. 441 (1981), reprinted in 1981 U.S.Code Cong. & Admin.News 396, 707. The Senate Finance Committee made the same statement. Staff of Senate Comm. on Finance, 97th Cong., 1st Sess., Proposals for Reductions in Spending Programs Under the Jurisdiction of the Senate Finance Comm. 41 (Comm. Print 1981). The House Conference Report explained that "[s]tates would be required to take prompt action to correct both overpayments and underpayments." H.R. Conf.Rep. No. 208, 97th Cong., 1st Sess. 983 (1981), reprinted in 1981 U.S.Code Cong. & Admin.News 396, 1345.
 
 
 16
 The House Ways and Means Committee issued a press release stating that "[t]he Committee approved a provision under which states would be required to promptly take all necessary steps to correct any overpayments or underpayments." Staff of House Comm. on Ways and Means, 97th Cong., 1st Sess., Comm. on Ways and Means Acts on Various Spending Reduction Measures 3 (Press Release 1981). The Office of Management and Budget stated that "[a]ny overpayment or underpayment of assistance would have to be corrected as a basic policy of efficient and equitable program administration." Office of Management and Budget, Fiscal Year 1982 Budget Revisions: Additional Details on Budget Savings 141 (1981). Richard Schweiker, then Secretary of HHS, testified before Congress that "[w]e will require that AFDC overpayments be repaid. At the same time, of course, we will require states to make good on underpayments." Statement by Richard S. Schweiker Before the Subcomm. on Public Assistance and Unemployment Compensation, Comm. on Ways and Means, House of Representatives 14 (March 11, 1981).
 
 
 17
 In spite of the statute's broad wording and legislative history, the Secretary argues that Congress's intent is unclear. Because subpart (C) only applies to current recipients, the Secretary contends that current recipients alone may receive corrective payments. See 42 U.S.C. Sec. 602(a)(22)(C). The district court rejected the Secretary's argument. It noted that "there is no need to instruct the state agency how to treat a corrective payment received by a former recipient because only current recipients are adversely affected by receipt of a reimbursement. When former recipients are reimbursed, it cannot affect their eligibility for current benefits, because they receive none." Subpart (C) protects current recipients from being penalized for corrective payments. The court refused "to construe language, which makes sure that families get the benefit of the underpayment, in such a way as to deprive many families of any underpayments whatsoever."
 
 
 18
 We agree with the district court. The structure of section 602(a)(22) supports our conclusion. The statute distinguishes between overpayments to past and present recipients. Subpart (A) refers to "an overpayment to an individual who is a current recipient." Subpart (B) applies to "an overpayment to any individual who is no longer receiving aid." In subpart (C), however, Congress failed to distinguish between underpayments to past and present recipients. This implies that all underpaid individuals were to be reimbursed, except that current recipients would not be penalized for the reimbursement. Had Congress wanted to restrict the plain meaning of "all" and "any" it could have done so.
 
 
 19
 The legislative history of section 602(a)(22) again supports our interpretation. The 1973 regulation explicitly limited corrective payments to current recipients and contained a provision, which, like subpart (C) of the statute, protected current recipients from being penalized for corrective payments. See 45 C.F.R. Sec. 233.20(a)(12)(ii)(b) (1973). Congress incorporated only one feature from the 1973 regulation: the provision protecting current recipients. Congress chose not to adopt the language explicitly limiting corrective payments to current recipients.
 
 
 20
 The Secretary next argues that "any" cannot be given too broad a reading because subpart (C) requires current recipients to count corrective payments as a resource two months after the payment is received. The Secretary ignores the fact that payments are never counted as income. Moreover, the practical effect of subpart (C) is to give a recipient two months to spend the corrective payment. If the payment is unspent, it is counted towards the maximum of $1000 that a family can keep in non-exempt resources and still remain on assistance. 42 U.S.C. Sec. 602(a)(7)(B). Subpart (C) does not compel a narrow reading of "any." We reject legal arguments "grounded in legal fiction rather than fact." Schrader v. Idaho Dep't of Health and Welfare, 768 F.2d 1107, 1110 (9th Cir.1985).
 
 
 21
 The Secretary asserts that invalidating the regulation would ignore the congressional purpose of OBRA. Former recipients, he contends, are less needy than current beneficiaries because they no longer meet the eligibility requirement. We recognize that Congress intended OBRA to reduce federal expenditures. See James v. O'Bannon, 715 F.2d 794, 808-09 (3d Cir.1983), cert. denied, 470 U.S. 1050, 105 S.Ct. 1746, 84 L.Ed.2d 812 (1985). Nevertheless, we question the Secretary's initial assumption that former recipients are less needy. In a sense, at one point they were doubly needy. A welfare agency not only had determined that they were poor enough to qualify for assistance, but they then were deprived of the proper amount of assistance.
 
 
 22
 Moreover, in enacting section 602(a)(22), Congress sought to ensure administrative accuracy. The Senate Report noted that "[b]y requiring the correction of both overpayments and underpayments, the Committee believes that recipients and welfare agencies alike will be encouraged to take greater responsibility for assuring the accuracy of administration." S.Rep. No. 139, 97th Cong., 1st Sess. 519, reprinted in 1981 U.S.Code Cong. & Admin.News 396, 786. Allowing underpayments to go uncorrected undermines the goal of assuring administrative accuracy. An agency should not profit from delay and error.
 
 
 23
 The Secretary finally observes that nowhere in the statute or in the legislative history is it explicitly stated that all underpayments to both current and former recipients shall be corrected. Nevertheless, nowhere is it said that only current recipients shall receive corrective payments. More important, Congress provided in the statute that "all" steps be taken to correct "any overpayment or underpayment". It failed to incorporate the current recipient restriction of the 1973 regulation. Congress rejected the Secretary's limitation. We do as well.[4]
 
 II. Attorney Fees
 
 24
 Under the EAJA a prevailing party receives attorney fees unless the position of the United States was substantially justified. 28 U.S.C. Sec. 2412(d)(1)(A). The district court determined that the Secretary's position was not substantially justified and awarded fees. We review the district court's determination of lack of substantial justification for an abuse of discretion. Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir.1987). We review its interpretation of the EAJA de novo. Id. at 1331.
 
 
 25
 In determining whether the government's position was substantially justified, "we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during the litigation." Id. at 1330. "That the Government lost does not raise a presumption that its position was not substantially justified." Petition of Hill, 775 F.2d 1037, 1042 (9th Cir.1985). The government bears the burden of showing substantial justification. Barry, 825 F.2d at 1330.
 
 
 26
 At the outset, plaintiffs and the Secretary contest the meaning of "substantial justification." We have long held that " '[w]here the Government can show that its case had a reasonable basis both in law and fact, no award will be made.' " League of Women Voters of California v. F.C.C., 798 F.2d 1255, 1257 (9th Cir.1986) (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4989). The district court, however, stated that the test was more than mere reasonableness.
 
 
 27
 The cause of the disagreement is the legislative history accompanying the reenacted EAJA. The original EAJA contained a "sunset" provision and expired on Sept. 30, 1984. In 1985 Congress reenacted the EAJA. See generally Allen v. Bowen, 821 F.2d 963, 964-65 (3d Cir.1987). The House Report accompanying the EAJA states that substantial justification means more than mere reasonableness:
 
 
 28
 Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.
 
 
 29
 H.R.Rep. No. 120, 99th Cong., 1st Sess. 9, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 138 (footnote omitted).
 
 
 30
 This court has never squarely addressed the 1985 legislative history. We recently noted that we have yet to do so. See Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 498 (9th Cir.1987). Since Kunzman we have twice stated that the test was one of reasonableness, but in each instance we failed to consider the 1985 legislative history. See Barry, 825 F.2d at 1330; Department of Health Servs. of California v. Secretary of Health & Human Servs., 823 F.2d 323, 328 (9th Cir.1987).
 
 
 31
 The circuits that have considered the legislative history are in conflict. Five circuits require more than reasonableness. See Gavette v. Office of Personnel Management, 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc) (clearly reasonable); Federal Election Comm'n v. Rose, 806 F.2d 1081, 1087 (D.C. Cir.1986) ("slightly more than reasonabl[e]"); Lee v. Johnson, 799 F.2d 31, 38 & n. 7 (3d Cir.1986) (more than merely reasonable, with "an unsettled or close question of law"); United States v. 1,378.65 Acres of Land, 794 F.2d 1313, 1318 (8th Cir.1986) ("clearly reasonable, well founded in law and fact, solid though not necessarily correct"); Haitian Refugee Center v. Meese, 791 F.2d 1489, 1497 (11th Cir.1986) ("more than mere reasonableness"), vacated in part on reh'g on other grounds, 804 F.2d 1573 (11th Cir.1986).
 
 
 32
 Three circuits continue to adhere to a general test of reasonableness. See Pullen v. Bowen, 820 F.2d 105, 108 (4th Cir.1987); Phil Smidt & Son, Inc. v. N.L.R.B., 810 F.2d 638, 642 n. 5 (7th Cir.1987); Russell v. National Mediation Bd., 775 F.2d 1284, 1289 (5th Cir.1985). The Second Circuit has followed this court in declining to decide the issue. See Rosado v. Bowen, 823 F.2d 40, 42 (2d Cir.1987). The Sixth Circuit will consider the issue en banc. See Riddle v. Secretary of Health and Human Services, 817 F.2d 1238 (6th Cir.1987), vacated and reh'g granted, 823 F.2d 164 (6th Cir.1987). One court believes that the difference in standards "appears more semantic than real." Pullen, 820 F.2d at 108.
 
 
 33
 We need not determine whether more than mere reasonableness is required, for we find the government met the higher standard. At the time the Secretary argued the case, the issue involved a matter of first impression. See Kunzman, 817 F.2d at 498 (absence of adverse precedent relevant to the inquiry); Armster v. United States Dist. Court for the Cent. Dist. of California, 817 F.2d 480, 483 (9th Cir.1987) ("no case law directly to the contrary"). The parties raised difficult questions of statutory interpretation, with substantial sums at stake. See Department of Health Servs. of California, 823 F.2d at 328 ("novel and difficult issues"); Minor v. United States, 797 F.2d 738, 739 (9th Cir.1986) (test case with no controlling precedent raised an "important, and doubtful, question of tax law"). The Secretary "argued forcefully and well for ... [his] position." Trustees for Alaska v. Hodel, 806 F.2d 1378, 1384 (9th Cir.1986). We conclude the district court abused its discretion in determining that the government lacked substantial justification.
 
 
 34
 The district court is AFFIRMED IN PART and REVERSED IN PART.
 
 
 35
 CANBY, Circuit Judge, concurring in part and dissenting in part:
 
 
 36
 I concur fully in Part I of Judge Skopil's opinion, which clearly demonstrates that the Secretary's regulation is inconsistent with the controlling statute. I dissent, however, from Part II, which reverses the district court's award of attorneys' fees under the Equal Access to Justice Act.
 
 
 37
 The question under review is whether "the position of the United States was substantially justified." 28 U.S.C. Sec. 2412(d)(1)(A). The majority opinion finds it unnecessary to resolve the question whether this standard requires mere reasonableness, or something more than reasonableness, because it concludes that the government has met either standard. I cannot agree.
 
 
 38
 Part I of Judge Skopil's opinion eloquently sets forth the reasons why I conclude that the position of the government certainly fails to meet the "more than reasonable" standard applied by the district court, and would also fail to meet a "mere reasonableness" standard. The governing statute was clear on its face; agencies were required to "take all necessary steps to correct any overpayment." 42 U.S.C. Sec. 602(a)(22). The legislative history, as discussed in the majority opinion, only reinforces the plain words of the statute. Against this background, it was the duty of the Secretary to write a regulation carrying out the clearly expressed intent of Congress. Instead, he wrote a regulation in conflict with that intent and, when challenged, he chose to litigate.
 
 
 39
 The majority relies heavily on the fact that the validity of the regulation had not previously been litigated. But statutes are law; when Congress speaks clearly, its command needs no blessing from the courts to become fully effective. The Secretary is not entitled to contest in court the plain words of the statute, fully supported by its legislative history, without the government's becoming liable for the fees such litigation causes the opposing party reasonably to incur. In short, when the Secretary is quite wrong, as he was here, fees should follow.
 
 
 40
 Had my view on this question prevailed, it might well have been necessary for the panel to resolve the question of the appropriate test to determine whether the position of the United States was substantially justified. I must say that I have some sympathy with the view that the difference between the two standards may be "more semantic than real." Pullen v. Bowen, 820 F.2d 105, 108 (4th Cir.1987). In any event, I have not prevailed, so it is unnecessary for me, as for the panel, to resolve the issue. If the proper standard is more than mere reasonableness, as the district court stated, I would affirm the award of fees as a clearly appropriate exercise of discretion. If the standard is mere reasonableness, I would remand to the district court to exercise its discretion under that standard, content that this record would support an award if the district court chose to make one.
 
 
 
 [1]
 The regulation requires state agencies to
 Specify uniform Statewide policies for prompt correction of any underpayments to current recipients and those who would be a current recipient if the error causing the underpayment had not occurred.... [R]etroactive corrective payments shall not be considered as income, or as a resource in the month paid nor in the next following month.
 
 
 [45]
 C.F.R. Sec. 233.20(a)(13)(ii)
 
 
 [2]
 The court also denied the Secretary's motion to dismiss for lack of jurisdiction over the removed state court action. On appeal, the Secretary contends that the court erred in so doing. We need not reach that jurisdictional issue. Plaintiffs and the State filed separate claims in district court after the Secretary removed the action. The court plainly had subject matter jurisdiction over the later filed claims. In those claims, Edwards and the State invoked federal question jurisdiction under 28 U.S.C. Sec. 1331 (1982). Sovereign immunity poses no bar. Congress has waived sovereign immunity for actions seeking relief other than damages in federal court against a government official. 5 U.S.C. Sec. 702 (1982)
 
 
 [3]
 The 1973 regulation stated:
 (ii) Prompt correction of underpayments to current recipients, resulting from administrative error where the State plan provides for recoupment of overpayments. Under this requirement:
 (a) Retroactive corrective payment shall be made only for the 12 months preceding the month in which the underpayment is discovered;
 (b) For purposes of determining continued eligibility and amount of assistance, such retroactive corrective payments shall not be considered as income or as a resource in the month paid nor in the next following month; and
 (c) No retroactive payment need be made where the administrative cost would exceed the amount of the payment.
 
 
 [45]
 C.F.R. Sec. 233.20(a)(12)(ii)
 
 
 [4]
 The one court to consider this issue has held that the Secretary's regulation violates the statute. See Tambe v. Bowen, 662 F.Supp. 939, 941 (W.D.N.Y.1987). Tambe was decided more than six months after we heard argument in this case