**Jesse CERVANTEZ, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**Louis SULLIVAN, Secretary of the Department of Health and Human Services, Defendant.**

**No. CIV. S–89–529 LKK.**

United States District Court,
E.D. California.

June 7, 1990.

Gary F. Smith, Carole F. Grossman, Legal Services of N. California, Woodland, Cal., Gill DeFord, Nat. Sr. Citizens Law Center, Los Angeles, Cal., Jeanette L. Smith, Legal Center for the Elderly & Disabled, Sacramento, Cal., for plaintiffs.

Sheila Lieber, Margot de Ferranti, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## AMENDED ORDER

KARLTON, Chief Judge Emeritus.

In this class action litigation, plaintiffs successfully challenged a policy and regulation of the Secretary of Health and Human Service by which he counted garnished monies as income in making eligibility and benefits determinations under the Supplemental Security Income (SSI) provisions of Title XVI of the Social Security Act. 20 C.F.R. § 416.1123(b)(2). Finding this practice inconsistent with clearly established Ninth Circuit precedent construing the Social Security Act, 42 U.S.C. section 1382a, this court invalidated that regulation and policy by its Orders dated August 8, 1989 and October 31, 1989. *Cervantez v. Sullivan*, 719 F.Supp. 899 (E.D.Cal.1989), 724 F.Supp. 757.

Final judgment was entered on November 6, 1989. On December 6, 1989, plaintiffs filed their motion for attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), and Local Rule 293 of this court. On December 26, 1989, the government timely filed a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1).

By Order dated March 14, 1990, this court denied plaintiffs' petition for EAJA fees, without prejudice, holding that the application had been filed prematurely with the result that the court lacked jurisdiction to consider the petition. On March 21, 1990, plaintiffs timely filed a motion for reconsideration of this order. Following oral argument on May 7, 1990, the matter was taken under submission and is disposed of herein.

## I

### STANDARDS

The Equal Access to Justice Act (EAJA) provides, in relevant part, as follows:

> [A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). A party seeking attorneys' fees pursuant to EAJA must submit an application to the court "within thirty days of a final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). In 1985, EAJA was amended to include section 2412(d)(2)(G), which explicitly defines "final judgment" as "a judgment that it final and not appealable." The 30-day limitation period for submitting fee applications is jurisdictional, and is to be construed narrowly. *Melkonyan v. Heckler*, 895 F.2d 556, 557 (9th Cir.1990).

## II

### PLAINTIFFS' MOTION FOR RECONSIDERATION

■ Previously, this court held that 28 U.S.C. § 2412(d)(1)(B), by its plain language, precluded the district court from entertaining an EAJA fee petition until a final, non-appealable order had been entered in the action. In view of the fact that the government filed its notice of appeal on December 26, 1989, I concluded that plaintiffs' fee application was premature. As a matter of plain meaning, that ruling may be correct. Nonetheless, the Supreme

Court has often explained that while the language of a statute is ordinarily regarded as conclusive, *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983), the court may examine the legislative history for the purpose of determining whether there is a "clearly expressed legislative intention" which contradicts or alters the plain language of the statute. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). Very strong evidence, if not explicit language, in the legislative history is necessary to overcome the plain meaning to be drawn from the statutory language. *In re Seidel*, 752 F.2d 1382, 1385 (9th Cir.1985). Examination of the legislative history to the 1985 amendments to EAJA reveals strong evidence that Congress intended the 30–day period to represent a final deadline for the filing of fee petitions rather than a fixed window within which such petitions must be filed. Moreover, it appears that Congress contemplated interim fee awards under this provision in appropriate cases.

Like the current statute, the pre–1985 version of the EAJA required fee applications to be filed "within thirty days of final judgment in the action." 28 U.S.C. section 2412(d)(1)(A). The statute did not, however, include a provision defining "final judgment." The circuit courts of appeal promptly split over the proper interpretation of this language. The Ninth Circuit held that the phrase "final judgment" "should be defined by its common usage in contexts such as 28 U.S.C. section 1291, Fed.R.App.P. 4(a), and Fed.R.Civ.P. 54." *McQuiston v. Marsh*, 707 F.2d 1082, 1085 (9th Cir.1983). Under this reading, the Ninth Circuit required EAJA fee applications to be filed within 30 days of entry of a district court judgment. The Seventh Circuit rejected this approach, construing the phrase "final judgment" to mean the time at which a judgment becomes "no longer contestable through the appellate process." *McDonald v. Schweiker*, 726 F.2d 311, 313 (7th Cir.1983); *accord Mass.*

*Union of Public Housing Tenants v. Pierce*, 755 F.2d 177 (D.C.Cir.1985).

In *McDonald*, Judge Posner carefully explained that "the 30–day provision in the Act was meant to establish a deadline, not a starting point." 726 F.2d at 314. The court continued:

> The claimant can apply for fees as soon as he has prevailed, i.e., as soon as the district court has entered its final judgment; and in many cases the claimant's lawyer, being hungry to see some cash, will do just that and the advantages of consolidated appeals will be realized. . . .
>
> In any event, giving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare at some cost, perhaps, to the courts but none we can think of to the executive branch.

*Id.* Further, aware that the relevant provisions of EAJA were due to expire on October 1, 1984, Judge Posner called upon Congress to indicate whether it intended his interpretation or that of the Ninth Circuit to govern when it reenacted the statute.

In a Supplemental Report issued by the House Committee on the Judiciary on the 1985 EAJA Amendments, H.R.Rep. No. 99–120, 99th Cong., 1st Sess., U.S.Code Cong. & Admin.News 1985, p. 132, the Committee explained that the definition of "final judgment" was clarified for the purpose of "ratifying the approach taken by the courts in *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983), and *Mass. Union Public Housing Tenants v. Pierce*, 755 F.2d 177 (D.C.Cir.1985)." *Id.* at 6, U.S. Code Cong. & Admin.News 1985, p. 134. Thus, in clear and unequivocal language, Congress endorsed Judge Posner's view that EAJA fee petitions could be filed and considered any time after final judgment is entered by the district court, but no later than 30 days following the entry of a final, non-appealable judgment from the appellate court.[1]

This intention is further expressed in an explanatory footnote included in the Committee's Supplemental Report which states:

---

1. In *McQuiston v. Marsh*, 790 F.2d 798 (9th Cir.1986) (*McQuiston II*), the Ninth Circuit ac-

knowledged that Congress overruled *McQuiston I* when it reenacted EAJA in 1985.

Fee petitions may be filed before a "final judgment." If the Court determines that an award of interim fees is inappropriate the petition should be treated as if it were filed during the thirty-day period following the final decision. The overly technical approach in *Auke Bay Concerned Citizen's Advisory Council v. Marsh,* 755 F.2d 717 (9th Cir.1985) should be avoided.

H.R.Rep. No. 99–120, 99th Cong. 1st Sess. at 18 n. 26 (1985), U.S.Code Cong. & Admin.News 1985, p. 146 n. 26. Following this directive, the Ninth Circuit has frequently held that interim fees are available under EAJA where a party has prevailed on some substantial part of its claim, notwithstanding the need for further proceedings. *See, e.g., Animal Lovers Volunteer Association v. Carlucci,* 867 F.2d 1224 (9th Cir.1989); *National Wildlife Federation v. FERC,* 870 F.2d 542 (9th Cir.1989). It necessarily follows that the 30–day period was intended to operate as a statute of limitations rather than as a jurisdictional bar to consideration of EAJA fee applications. Indeed, two panels of the Eleventh Circuit have explicitly adopted this interpretation of section 2412(d)(1)(B). *James v. U.S. Dept. of HUD,* 783 F.2d 997 (11th Cir.1986); *Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.1986).

Finally, I note that the government does not contest the essential proposition that the 30–day filing period does not erect a jurisdictional bar to the court's consideration of an EAJA fee application following entry of a judgment on the merits by the district court. In view of the legislative history explicitly adopting the flexible approach described by the Seventh Circuit in *McDonald,* as well as the authorization for interim fee awards, I conclude this court has jurisdiction over plaintiffs' EAJA fee application.

## III

### THE GOVERNMENT'S REQUEST FOR A STAY

■ The government maintains, nonetheless, that this court should exercise its discretion and defer consideration of plaintiffs' fee application until the government's appeal is resolved for reasons of judicial economy. This argument is premised on the assertion that "the cases whose approach the Congress intended to ratify ... clearly endorse the filing of EAJA fee petitions after a judgment has become final because the time for appeal has run." Government's Opposition at 5. I cannot agree.

First, no authority has been cited for the proposition that the Court, in its discretion, may refuse to consider an EAJA fee petition that has been timely brought for the purpose of conserving judicial resources. Moreover, in *McDonald,* Judge Posner observed that although the prospect of multiple proceedings would certainly have an impact on the courts, "there is no indication that the Congress that enacted the Equal Access to Justice Act was worried about the burdens the Act might place on the Courts of Appeals." 726 F.2d at 314. Given Congress' explicit endorsement of *McDonald,* the government's suggestion that judicial economy is a consideration Congress intended the courts to take into account in deciding whether to hear a fee petition prior to resolution of any appeal of the merits appears questionable.

Additionally, it is not clear that judicial economy would be served by deferring consideration of the petition until the government's appeal is resolved. Any appeal taken from a ruling on the fee petition entered at this time would likely be consolidated with the government's appeal on the underlying merits. A single panel of the Ninth Circuit could rule on the entire matter at once. Since under EAJA a plaintiff's entitlement to fees turns in large part on whether the government's position was substantially justified, requiring a detailed review of the merits, consolidated appeals might well result in a savings of time and effort. By contrast, if the appeals were heard separately, two panels of the circuit would have to become fully versed in the underlying issues presented in this case. Judicial resources, of course, would be conserved if the Ninth Circuit reversed this court's decision on the merits. Since I ob-

viously believe my previous decision was the correct one, I cannot give the possibility of reversal determinative weight. Thus, the benefit of consolidated appeals would seem to outweigh the potential savings of time and effort if the decision were reversed.

In sum, no persuasive reason exists why this court should defer ruling on plaintiffs' petition for EAJA fees. The request is therefore denied.

## IV

## THE MERITS OF PLAINTIFFS' FEE PETITION

For purposes of plaintiffs' EAJA fee application, the government concedes that plaintiffs are prevailing parties. Given that plaintiffs prevailed on nearly every substantive issue tendered to this court, I must concur in this conclusion. The issues tendered are (1) whether the government's conduct was substantially justified within the meaning of the statute, precluding an award of fees, (2) if not, whether plaintiffs are entitled to an hourly rate in excess of the $75 statutory cap, and (3) whether plaintiffs are entitled to fees for the time spent litigating their entitlement to EAJA fees. I address each issue in turn.

### A. *Substantial Justification*

EAJA creates a rebuttable presumption that fees shall be awarded to a prevailing party in litigation against the government unless the government can demonstrate that its position was substantially justified. *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir.1988); *United States v. 313.34 Acres of Land*, 897 F.2d 1473 (9th Cir.1989). The government bears the burden of proving substantial justification. *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1988).

The Supreme Court has construed the phrase "substantially justified" to mean " 'justified in the substance or in the main' —that is, justified to a degree that would satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541;

101 L.Ed.2d 490 (1988). In so holding, the High Court explicitly approved prior Ninth Circuit authority holding a position which has a "reasonable basis in law and fact" is substantially justified. *Id.; see also Barry v. Bowen*, 825 F.2d at 1330.

■ The Ninth Circuit has repeatedly held that for purposes of the EAJA determination, the court must evaluate both the government's litigating position and "the action or failure to act by the agency upon which the civil action is based." *Abela v. Gustafson*, 888 F.2d 1258, 1264 (9th Cir. 1989), *quoting* 28 U.S.C. § 2412(d)(2)(D). This is a two-part inquiry in which the court must examine first whether the government was substantially justified in taking its original action and, second, whether the government was substantially justified in defending the validity of the action in court. *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 559 (9th Cir.1989); *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). In applying this test, the court must consider both the circumstances prior to and during litigation. *Id., quoting Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir. 1988). A finding that either the government's underlying conduct which gave rise to the litigation or its litigation position was not substantially justified is sufficient to support an award of EAJA fees. *Andrew v. Bowen*, 837 F.2d 875, 880 (9th Cir.1988) (after concluding that government's underlying position was not substantially justified, court declined to examine reasonableness of Secretary's litigation position prior to awarding EAJA fees); *Thompson v. Dept. of Labor*, 885 F.2d 551 (9th Cir.1989) (where court found government's litigation position to be unreasonable, EAJA fees awarded despite finding that government's underlying conduct was reasonable).

Applying this test, I conclude that the Secretary's underlying conduct in this action was not "substantially justified." Therefore, I need not reach the issue of whether its litigation position was substantially justified.[2]

---

**2.** I note, however, that the Secretary would also     have difficulty prevailing even if the court were

Title XVI of the Social Security Act defines unearned income as including "any payments *received* as an annuity, pension, retirement, or disability benefit, including ... disability insurance benefits." 42 U.S.C. § 1382a(a)(2)(B) (emphasis supplied). Prior to 1982, the Secretary's regulations had consistently defined "countable income" as including cash or items of value that were actually available to the individual to provide for his or her basic needs. *Cervantez v. Sullivan*, 719 F.Supp. 899, 902 n. 2 (E.D.Cal.1989). In 1982, the Secretary reversed this longstanding policy when it promulgated the regulation in issue here, 20 C.F.R. § 416.1123(b)(2). This regulation explicitly included garnished income, which is never actually available to the social security claimant, in the definition of "countable income" for purposes of determining eligibility for, and the amount of SSI benefits. As plaintiffs argued in the underlying litigation, both before and after the Secretary issued this regulation the Ninth Circuit had interpreted section 1382a of the Social Security Act defining countable "unearned income" to include only "items of value which are actually available to meet the beneficiary's basic needs." *Cervantez*, 719 F.Supp. at 912, discussing *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981); *Summy v. Schweiker*, 688 F.2d 1233 (9th Cir.1982); and *Department of Health Services v. Secretary of HHS*, 823 F.2d 323 (9th Cir.1987).

In opposing plaintiffs' application for EAJA fees, the Secretary asserts that he "was more than reasonable in promulgating the regulation for nationwide application in 1982, and in distinguishing the Ninth Circuit cases relied on by plaintiffs, and in arguing that counting income not actually received was a reasonable interpretation of the statute free from the dis-

tortions and inequities created by plaintiffs' interpretation." Government's Opposition Brief at 10 (filed January 3, 1990). Repeating the arguments advanced in opposition to plaintiffs' motion for summary judgment, the Secretary contends that *Whaley, Summy* and *DHS* do not establish an "actual availability" principle, and notes that four other circuits have construed the identical provision of the social security statute as permitting the Secretary to count, for SSI purposes, income constructively received by the beneficiary.

These arguments are insufficient to sustain the government's burden of demonstrating substantial justification to defeat plaintiffs' entitlement to fees for two reasons. First, the Secretary has utterly failed to explain the reasons that, in 1982, the Secretary abruptly altered his longstanding policy of counting only income that was "actually available" to meet the SSI claimant's basic needs. The Secretary would appear to contend that his construction of the phrase "payments received" as including amounts both actually and constructively received by the SSI claimant is reasonable since four circuit courts subsequently accepted this argument in the benefits recoupment cases. *Lyon v. Bowen*, 802 F.2d 794 (5th Cir.1986); *Healea v. Bowen*, 871 F.2d 48 (7th Cir.1988); *Szlosek v. Secty of HHS*, 861 F.2d 13 (1st Cir.1988); *Robinson v. Bowen*, 828 F.2d 71 (2d Cir. 1987). This fact, standing alone, is not determinative of the "reasonableness" of the Secretary's conduct, however. As the Supreme Court explained in *Pierce v. Underwood:*

> Conceivably the government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified yet lose. Nevertheless, a string of

to reach this issue. The Secretary moved to dismiss this action for lack of subject matter jurisdiction, arguing that plaintiffs had failed to exhaust their administrative remedies and did not qualify for judicial waiver of the exhaustion requirement. Rejecting this argument out of hand, this court noted that the Secretary's assertion that the claim was not "collateral" to a claim for benefits was premised on cases that were "plainly distinguishable" and that its asser-

tion that no irreparable harm would result if exhaustion was not waived was "nothing short of cruel" and "simply indecent." *Cervantez*, 719 F.Supp. at 906. Even if the government's position on the merits of the lawsuit could be characterized as reasonable, certainly its conduct of contesting this court's jurisdiction could not. Thus, plaintiffs would likely be entitled to EAJA fees for that reason alone.

losses can be indicative; and even more so a string of successes.

487 U.S. at 569, 108 S.Ct. at 2552, 101 L.Ed.2d at 507. Here, the cases relied on by the Secretary in support of its conduct were decided long after the challenged regulation became effective; they do not explain the reasons the Secretary altered the policy in 1982. More importantly, as I have previously explained, "the analysis in *Lyon* contravenes both well settled principles of statutory construction and the statutory scheme itself." *Cervantez*, 719 F.Supp. at 914. Thus, for the same reasons that this court refused to follow *Lyon* and its progeny on the merits, I find that the government's decision to construe the Social Security Act as authorizing the counting of income "constructively received" by a claimant in making SSI benefits and eligibility determinations in 1982 cannot be viewed as "substantially justified."

Second, even if this court were to find that the Secretary's interpretation of the statute was not "so at odds with congressional intent as to render it lacking in substantial justification," *Kali*, 854 F.2d at 334, this case did not tender a question of first impression in the Ninth Circuit.[3] The Secretary's attempts to distinguish the Ninth Circuit cases construing the phrase "unearned income" employed by Congress in section 1382a of the Social Security Act as including only cash or items of value "actually available" to the claimant are no more availing now than before.

The Secretary again argues that *Whaley* and *Summy* construed the Veteran's Administration statute rather than the SSI statute, and further that the relevant language in *DHS* is unpersuasive dicta. As

before, the Secretary has mischaracterized the relevant Ninth Circuit authority. As I have previously explained, the *Whaley* court plainly held that the Secretary's conduct of attributing VA pension benefits paid to a veteran for the support of his dependent children did not constitute unearned income to the veteran for purposes of computing SSI benefits. *Whaley*, 663 F.2d at 875. Moreover, this case was decided before the Secretary promulgated the challenged regulation. Shortly thereafter, in *Summy*, the court held that the Secretary's policy of counting sums received from the Veteran's Administration in reimbursement for certain extraordinary medical expenses as unearned income in computing Summy's SSI benefits violated the Social Security Act. Clearly, the Circuit was construing the Social Security Act in both cases. Thus, these cases stand for the proposition that the Secretary may only count income which is actually available to meet the claimants basic needs in making SSI determinations. Finally, although the Court in *DHS* was construing the Medicaid Act, it explained that *Whaley*, an SSI case, compelled the conclusion that "income that a Medicaid recipient uses to pay court ordered child support or alimony cannot be used to reduce the recipient's Medicaid benefits." *Cervantez*, 719 F.Supp. at 912. The Secretary's suggestion that none of these cases involved a construction of the SSI statute is plainly disingenuous. The derivative argument that the Secretary was reasonable in distinguishing these cases in both promulgating the challenged regulation and enforcing it in the Ninth Circuit must therefore also be rejected. Indeed, as one district court has recently noted, "a

---

**3.** *Edwards v. McMahon*, 834 F.2d 796 (9th Cir. 1987), relied on by the Secretary, is therefore distinguishable. In that case, the circuit affirmed a district court order denying EAJA fees to plaintiffs counsel in an action which such successfully challenged a federal regulation as inconsistent with a provision of the AFDC statute. A divided panel of the circuit explained that "although the Secretary's interpretation of the requirements of the statute, as expressed in the disputed regulation, was incorrect, the question presented was one of first impression, and raised difficult questions of statutory interpretation with substantial sums at stake." *Id.* at

802–03. Under these circumstances, the circuit concluded that the government's position was reasonable. In the current case, by contrast, at the time the disputed regulation was promulgated, the Ninth Circuit had in fact interpreted the statute in a manner inconsistent with the regulation. Thus, *Edwards* is not controlling here. Further, it bears noting that in dissent, Judge Canby objected to the majority's conclusion that the government's position was reasonable due to a dearth of case law interpreting the statute, arguing that "when Congress speaks clearly, its command needs no blessing from the courts to become effective." *Id.* at 803.

position of the Secretary which is 'contrary to clearly established circuit precedent' obviously cannot have a reasonable basis in law." *Brown v. Sullivan,* 724 F.Supp. 76, 78 (W.D.N.Y.1989).

In sum, while defendant is correct in asserting that the mere fact the Secretary did not prevail in the underlying litigation does not raise a presumption that its position was not substantially justified, *Kali v. Bowen,* 854 F.2d 329, 330 (9th Cir. 1988), under the circumstances presented here, the government has failed to carry its burden of demonstrating that its conduct of promulgating the challenged regulation had a "reasonable basis in law and/or fact." *Id.* at 333. At the time the regulation became effective, the Ninth Circuit had already decided *Whaley.* Moreover, the plain language of the statute referred to "payments received" by the claimant—connoting a requirement of actual availability. Finally, in promulgating this regulation, the Secretary reversed a longstanding policy of counting only cash and items of value actually available to meet the claimant's basic needs. Thus, plaintiffs are entitled to an award of EAJA fees.

### B. *The Amount of Fees*

Having concluded that plaintiffs are entitled to EAJA fees, I must next determine the appropriate amount of fees to award. The statute states that "attorneys' fees shall be based upon the prevailing market rates for the kind and quality of the services furnished" but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

Plaintiffs' attorneys assert that they are entitled to be compensated at market rates for the substantive work performed in this litigation. The Secretary objects to the amount of fees sought, claiming that plaintiffs should be limited by the $75 per hour statutory cap, adjusted for inflation, and further that the hours claimed by plaintiffs' counsel are excessive and duplicative. Under the controlling caselaw, plaintiffs prevail on these issues.

### 1. Fees In Excess of The Statutory Minimum

In *Pierce v. Underwood, supra,* the Supreme Court considered at length what Congress meant by a "special factor" that would justify fees at an hourly rate higher than $75 per hour. It concluded that Congress intended for courts to deviate from the statutory rate only in cases where the attorneys have "some distinctive knowledge or specialized skill needful for the litigation in question, as opposed to general lawyerly knowledge and ability useful in all litigation" such as "an identifiable practice specialty, such as patent law or knowledge of a foreign law or language." 487 U.S. at 572, 108 S.Ct. at 2554, 101 L.Ed.2d at 509. Further, an attorney seeking fees in excess of the statutory rate must demonstrate that counsel with those qualifications "can be obtained only at rates in excess of the $75 cap." *Id.*

Applying *Pierce,* in *Pirus v. Bowen,* 869 F.2d 536 (9th Cir.1989), the Ninth Circuit determined that attorneys who have developed a practice specialty in social security law may qualify for market rate fees under EAJA where the other requirements are met, explaining:

> The expertise and skills that [social security practitioners] develop[ ] are akin to those developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of a particular class of clients ... and of how those needs could best be met under the existing statute and regulations.

*Id.* at 541. Here, as in *Pirus,* plaintiffs have adequately demonstrated that the attorneys for whom market rates are sought "have litigated various class actions challenging the provisions of the Act," *id.,* and have "extensive knowledge of the Act, its legislative history, and the development of the Social Security Administration's regulations." *Id. See* Declaration of Gary Smith (filed December 6, 1989); Declaration of Carole Grossman (filed December 6, 1989);

and Declaration of Gill Deford (filed December 6, 1989).

Moreover, the nature of the legal problem presented in this litigation required application of these attorneys' "distinctive knowledge" and "specialized skills." In contrast to a routine disability case, this lawsuit presented the legal issue of whether a particular regulation promulgated by the Secretary of Health and Human Services was violative of the Social Security Act. Resolution of the merits of this case turned on an explication of the intent of Congress in enacting the Social Security Act, as expressed in the language of the statute, interpretive case law, and the legislative history, as well as extensive knowledge of the history and structure of the Secretary's regulations. Although it is true this court ruled in plaintiffs' favor on the basis of "binding authority," this does not mean that the special knowledge of the history and purposes of the Act possessed by plaintiffs' counsel was not required to litigate this case. As plaintiffs point out, this case likely would not have been brought had plaintiffs' counsel not been experts in the field. Additionally, the case presented several complex jurisdictional issues regarding waiver of exhaustion of administrative remedies and tolling of the statute of limitations. Finally, this case was complicated by the existence of four out-of-circuit cases upholding a section of the challenged regulation relating to income withheld by the SSA to recoup Title II benefit overpayments. Thus, the defendant's suggestion that this was a "relatively straightforward" case, resolved solely by reference to "binding authority," is incorrect.

Finally, plaintiffs have adequately demonstrated the dearth of private counsel in the Sacramento area with the experience and ability to litigate an action of this nature at the statutory rate. Declaration of Bruce J. Hagel, Exhibit A to Declaration of Carole F. Grossman.[4] Indeed, the representations made in Hagel's declaration are borne out by the court's own experience in presiding over numerous social security matters over the last ten years.

In conclusion, plaintiffs should be awarded fees in excess of the statutory cap to compensate for their expertise which contributed to the efficient resolution of this litigation.

### 2. The Claimed Fees

The Secretary further objects to both the hourly rates and hours claimed by plaintiffs in their fee petition. Plaintiffs have claimed they are entitled to be reimbursed at the following rates:

| | |
|---|---|
| Gary Smith (lead counsel): | $140 per hour |
| Carole Grossman: | $165 per hour |
| Gill Deford: | $200 per hour |
| Jeannette Smith: | $102.50 per hour [5] |

In his opposition, the Secretary merely speculates that the claimed rates are excessive, but provides no basis for that contention. The court finds that these rates are commensurate with those charged by attorneys of comparable skills and experience in the relevant market. *See* Smith Declaration at 2–3; Grossman Declaration at 2; Deford Declaration at 2. Additionally, after reviewing the billing statements tendered by plaintiffs, I conclude that the amount of fees claimed by these attorneys for the work performed in this litigation are eminently reasonable. Plaintiffs succeeded in resolving a piece of complex litigation in a relatively short period of time. Under these circumstances, the suggestion that the hours claimed are excessive cannot be credited.

### C. Fees for Litigation of Entitlement to EAJA Fees

■ The final issue to resolve is whether plaintiffs are entitled to attorneys' fees for the time spent preparing and litigating the fee issue. The Supreme Court has recently

---

**4.** Hagel, a private social security practitioner and an active member of the National Organization of Social Security Claimants' Representatives, declares that he knows of "no private attorneys in the Sacramento area, who handle cases such as *Cervantez* or who are familiar not only with the Social Security Act but also with complex class action practice and the technical requirement of jurisdiction under 42 U.S.C. § 405(g)." *Id.*

**5.** The Secretary does not contest the rate claimed for Ms. Smith's services, representing the $75 statutory rate adjusted for inflation.

held that once a litigant has met all of the eligibility conditions for fees under EAJA, the district court may award fees for all portions of the litigation including fees and costs expended in litigating the plaintiff's entitlement to fees. *Commissioner, INS v. Marie Lucie Jean,* — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). In view of my conclusion that the government's underlying position giving rise to this litigation was not substantially justified, plaintiffs shall be awarded all fees incurred in litigating their entitlement to fees.[6]

## V

## ORDER

In light of the foregoing, IT IS HEREBY ORDERED:

1. Plaintiffs' motion for reconsideration is GRANTED. This court's order dated March 14, 1990, is hereby VACATED.

2. Plaintiffs' motion for attorneys' fees is GRANTED in its entirety.

3. Plaintiffs' counsel is awarded attorney fees and costs in the amount of Thirty-five Thousand Nine Hundred Forty-three Dollars ($35,943) and One Hundred Sixty-five Dollars ($165), respectively.

IT IS SO ORDERED.

---

[6]. Fees shall not be assessed against the government to compensate for the time spent by plaintiffs' counsel preparing its motion for reconsideration. This court's order of March 14, 1990, denying the fee petition for lack of subject matter jurisdiction was the product of the court's independent interpretation of the fee statute rather than any conduct of the defendant. Fees would not appear to be authorized under the statute for that part of the fee litigation.