**Jesse CERVANTEZ, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**Louis SULLIVAN, Secretary of the Department of Health and Human Services, Defendants.**

**No. CIV. S–89–529 LKK/EM.**

United States District Court, E.D. California.

Aug. 8, 1989.

---

Gary F. Smith, Carole F. Grossman, Legal Services of N. Cal., Woodland, Cal., Jeanette L. Smith, Legal Center for the Elderly & Disabled, Sacramento, Cal., Gil Deford, Peter Komlos–Hrobsky, National Sr. Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Sheila Lieber, Margot de Ferranti, U.S. Dept. of Justice, Federal Programs Branch, Civ. Div., Washington, D.C., for defendants.

## ORDER

KARLTON, Chief Judge.

This action for declaratory and injunctive relief challenges the validity of 20 C.F.R. § 416.1123(b)(2). Under that regulation, the Department of Health and Human Services counts as income, money that has been garnished from Supplemental Security Income ("SSI") applicants or recipients, when calculating entitlement to SSI benefits under Title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381–1383c.

The matter is before the court on the defendant's motion to dismiss for lack of subject matter jurisdiction, and the plaintiff's motions for class certification and for summary judgment.[1] For the reasons I explain below, the defendant's motion to dismiss is DENIED, and the plaintiff's motions for class certification and for summary judgment are hereby GRANTED.

## I

## CASE BACKGROUND

Plaintiff, Jesse Cervantez, is 50 years old and disabled. He has been receiving bene-

fits under the Social Security Disability Insurance ("SSDI") program pursuant to Title II of the Social Security Act since 1985. Declaration of Jesse Cervantez, Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction, Exhibit A at 1 (hereinafter "Cervantez Declaration"). SSDI is paid to disabled persons who suffer from a mental or physical disability. Although it is administered by the Social Security Administration, the SSDI program is funded by the FICA contributions of employees and employers. *Bowen v. City of New York*, 476 U.S. 467, 469, 106 S.Ct. 2022, 2024, 90 L.Ed.2d 462 (1986).

Plaintiff is also eligible to receive SSI benefits under Title XVI of the Social Security Act. The SSI program is a nationwide needs-based assistance program which is intended to provide subsistence income, as defined by federal standards, to indigent disabled persons who satisfy one of the categorical requirements of age, blindness or disability. SSI is funded out of general revenues collected through federal taxes, and is also administered by the Social Security Administration ("SSA"). *Lyon v. Bowen*, 802 F.2d 794, 796 (5th Cir.1986). Eligibility for SSI benefits is restricted to persons whose monthly resources and income fall below a statutorily defined minimum income level.

The Secretary of the Department of Health and Human Services (hereinafter "the Secretary") determines both eligibility and the amount of an individual's SSI benefits by comparing "countable income" (i.e., income derived from sources other than SSI) with the statutory federal benefit level plus any applicable state supplement. The statute defines "income" for purposes of this determination to include money that is earned by the recipient by virtue of his or

---

1. Initially, plaintiff sought a preliminary injunction. After review, it appeared to the court that the action tendered a pure question of law. A district court may "enter summary judgment *sua sponte* so long as the opposing party [is] on notice that [it has] to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see*

*also* 10A C. Wright, A, Miller, & M. Kane, *Federal Practice and Procedure*, Civil 2d § 2770 at 27–28 (1983). At hearing, neither party objected to the court's proposal to treat plaintiff's motion for a preliminary injunction as one for summary judgment and to reach the merits of the case. Accordingly, the motion will be so treated.

her employment, 42 U.S.C.A. § 1382a(a)(1) (West Supp.1989), as well as items of value, whether cash or in-kind, obtained from other sources called "unearned income." 42 U.S.C.A. § 1382a(a)(2) (West Supp.1989). The SSI benefit is the difference between the value of an SSI income as defined above, and the statutory benefit level.

The Secretary has adopted a series of complex regulations governing eligibility for both the SSDI and the SSI programs. 20 C.F.R. pt. 404, subpt. P (1985) (SSDI); 20 C.F.R. pt. 404, 416, subpt. I (1985) (SSI). Prior to 1982, the regulations defined "countable income" as including only cash or other sources of value which were actually available to the applicant to provide for his or her basic needs including food, clothing and shelter.[2]

This policy was reversed in 1982, when 20 C.F.R. § 416.1123(b)(2) was amended. It now provides:

> (b) *Amount considered as income:* We may include more or less of your unearned income that you actually receive....
>
> ....
>
> (2) We also include more than you actually receive if amounts are withheld because of a garnishment.

Contrary to the former policy, the regulation now explicitly provides that certain income that is not actually available to satisfy the SSI applicant's or recipient's basic needs will be included in the determination of both eligibility for, and the amount of, SSI benefits.

Plaintiff is entitled to receive monthly benefits of $576 under the SSDI program. Plaintiff's Memorandum of Points and Authorities, Exhibit B. In November 1988, the Secretary began to withhold a substantial portion of Mr. Cervantez' Title II benefits to satisfy a state court garnishment order pursuant to 42 U.S.C. § 659.[3] Presently approximately $359 of plaintiff's benefits are being withheld pursuant to the garnishment so that in fact he receives only $198 of his Title II benefits. Under 20 C.F.R. § 416.1123(b)(2), however, the Secretary has calculated the amount of plaintiff's SSI benefits as if he were in fact receiving the full Title II benefits. As a result, he receives approximately $80 from SSI, so that his total income is less than $300 per month, while the federal benefit level for similarly situated persons under the relevant provisions of the statute is $687.[4] The effects of this method of calculation have been devastating for Mr. Cervantez. *See* section II–B 2, *infra.*

On November 3, 1988, plaintiff filed a Request for Reconsideration of the Secretary's determination of benefits in which he challenged, *inter alia*, the SSA's policy of counting garnished Title II benefits as income for SSI purposes. Complaint, para. 21, Exhibit F. In a Notice of Reconsideration dated February 2, 1989, the Secretary denied plaintiff's request in this regard. Complaint, para. 22, Exhibit G. On March 9, 1989, Mr. Cervantez appealed the adverse decision of the SSA by filing a Request For Hearing by an Administrative Law Judge on the issue of the validity of the SSA's regulation. Complaint, para. 23,

---

2. As originally adopted in 1977, the Secretary's regulations interpreting unearned income provided: "In determining the amount of unearned income the amount actually available to the individual is considered." 20 C.F.R. § 416.1120 (1977). This interpretation was reaffirmed in 1979 by the Secretary's proposed new rules for defining countable income, which were premised on the notion that income is "anything an individual receives in cash or in kind that can be used to meet his or her basic needs for food clothing and shelter." 44 Fed.Reg. 6,430 (1979). The addition of 20 C.F.R. § 416.1123(a), entitled "How we count unearned income" explained that "[w]e count unearned income when you actually receive it or when it is first available to

you or set aside so you can use it at any time." 20 C.F.R. § 416.1123(a) (1979).

3. Under this statute, the United States subjects itself to legal process for the enforcement of child support or alimony judgments against persons to whom the United States owes money. Although the statute was designed to prevent federal employees from evading such judgments, it applies equally to recipients of Title II benefits. 42 U.S.C.A. § 1383((d)(1) (West Supp. 1989).

4. *See* 42 U.S.C.A. § 1382 (West Supp.1989) and Social Security Administration, SSA Pub. No. 17–002 at 11 (January 1989).

Exhibit H. On April 13, 1989, plaintiff filed the current complaint. At the time the complaint was filed, no date for hearing before an administrative law judge had been set.

In this action, plaintiff charges that 20 C.F.R. § 416.1123(b)(2) violates section 1612(a)(2)(B) of Title XVI of the Social Security Act, which defines "unearned income" as follows:

> [A]ny *payments received* as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits....

42 U.S.C.A. § 1382a(a)(2)(B) (West Supp. 1989) (emphasis added).

## II

### THE SECRETARY'S MOTION TO DISMISS

In his complaint, plaintiff asserts that jurisdiction in this court is proper under both the Social Security Act, 42 U.S.C.A. §§ 405(g) and 1383(c)(3), and the Mandamus Act, 28 U.S.C.A. § 1361. The Secretary has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1). He contends that plaintiff has failed to exhaust his administrative remedies under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), which he argues are exclusive under section 205(h) of the Act, 42 U.S.C.A. § 405(h).

### A. *Standards for Dismissal Under Fed.R.Civ.P. 12(b)(1)*

A party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See* 2A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice, para. 12.07, at 12.46–47 (2d ed.1987). *See also Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 731 (11th Cir.1982); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Federal Sav. and Loan, Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A complaint alleging federal question jurisdiction will be dismissed for lack of subject matter jurisdiction for any one of three reasons: if the cause does not "arise under" any federal law or the United States Constitution, if there is no case or controversy within the meaning of that constitutional term, or if the cause is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). The Secretary claims that by virtue of plaintiff's failure to exhaust his administrative remedies, the matter at bar falls within the third category. I do not agree.

### B. *Jurisdiction Under Section 205(g)*

■ The Social Security Act provides in relevant part that:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision....

42 U.S.C.A. § 405(g) (West 1983). By its terms, recourse to a district court under this section may be had only in those cases in which the Social Security claimant has

exhausted his or her administrative remedies by obtaining a "final decision." *See, e.g., Johnson v. Heckler*, 769 F.2d 1202, 1207 (7th Cir.1985), *vacated on other grounds sub nom. Bowen v. Johnson*, 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987).

The Supreme Court has analyzed the "final decision" requirement enunciated in section 205(g) as consisting of two elements. First, the claimant must have presented a claim for benefits to the Secretary; this requirement is jurisdictional and cannot be waived. *Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986). Second, the claimant must have exhausted his or her administrative remedies as prescribed by the statute. This latter requirement is not jurisdictional, however, and may be waived. *Id.* Ordinarily, the decision of whether to waive the exhaustion requirement is within the Secretary's discretion. In certain cases, however, "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.*

In the matter at bar, plaintiff has presented a claim for benefits to the Secretary of Health and Human Services, but has not pursued an administrative claim for benefits through the final level of appeal provided for in the Act. Complaint at para. 2. Plaintiff contends, however, that he has satisfied the requirements for a judicial waiver of the exhaustion requirement.

In *City of New York*, the Court held that two factors must be considered in deciding whether judicial waiver is warranted, first whether the claim in the lawsuit is collateral to a substantive claim for entitlement to benefits, and second, whether the claimant would be irreparably injured were the exhaustion requirement enforced against him. In enunciating this test, the Court was careful to note that "application of the exhaustion doctrine is intensely practical," emphasizing that:

> The ultimate decision of whether to waive exhaustion should not be made

solely by mechanical application of the [*Mathews v.*] *Eldridge* [, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18] factors, but should also be guided by the policies underlying the exhaustion requirement.

476 U.S. at 484, 106 S.Ct. at 2032. The Ninth Circuit has reformulated the standard enunciated in *City of New York* as a three-prong test:

> The claim at issue must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal of the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).

*Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir.1987). I turn to application of the *Cassim* test, keeping in mind the Supreme Court's practicality admonition.

### 1. Collaterality

The first issue is whether plaintiff's lawsuit can be viewed as "collateral to a substantive claim for benefits." *City of New York*, 476 U.S. at 483, 106 S.Ct. at 2032. A claim is collateral where the gravamen of plaintiff's action is not the award of benefits by the district court, but rather, a challenge to "the Secretary's failure to follow applicable regulations" on a systemwide basis. *Id.* Although the parameters of what constitutes a collateral claim may not be clearly defined, there appears to be a growing consensus in the lower courts that

> [w]hatever the outer limits of the notion of "collateral issues" may be ... where the plaintiff does not seek the specific entitlement which is the subject of an administrative proceeding, but rather challenges the standards under which the administrative agency proposes to make that determination, the issue is collateral.

*Greene v. Bowen*, 639 F.Supp. 554, 560 (E.D.Cal.1986), *appeal dismissed*, 844 F.2d 791 (9th Cir.1988) (citation omitted). *See also Beckless v. Heckler*, 622 F.Supp. 715, 718 (N.D.Ill.1985) (collateral claim where not tied to a claim for benefits and where a positive result will not necessarily result in

the plaintiff's receiving benefits); *Polaski v. Heckler,* 751 F.2d 943, 953 (8th Cir.1984), *vacated on other grounds sub nom. Bowen v. Polaski,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986) (action seeking Secretary's compliance with controlling case law and Social Security Act essentially collateral to issue of whether plaintiff is entitled to benefits); *Wilkerson v. Bowen,* 828 F.2d 117 (3d Cir.1987) (action challenging Secretary's non-acquiescence policy and validity of regulation collateral); *Pratt v. Bowen,* 642 F.Supp. 883, 887 (D.D.C.1986) (claims challenging constitutionality of Secretary's regulations collateral); *Duggan v. Bowen,* 691 F.Supp. 1487, 1507 (D.D.C. 1988) (statutory challenge to HHS policy "substantially collateral"); *but see McDonald v. Secretary of Health and Human Services,* 834 F.2d 1085, 1091 (1st Cir.1987).

Under this formulation, plaintiff's claim is collateral. The ultimate issue tendered by the instant lawsuit is whether the Secretary's policy of counting garnished income as "unearned income" for purposes of calculating SSI benefits comports with 42 U.S. C.A. § 1382(a)(2)(B). Plaintiff seeks a declaration that the regulation is invalid, an injunction preventing the Secretary from continuing to apply the regulation in the future and requiring the Secretary to redetermine plaintiff's benefits under the proper legal standard.

Although a favorable ruling on the merits will effect both past and future benefit determinations rendered by the Secretary, such a ruling "will not automatically determine whether [plaintiff or the class members will receive] benefits." *Beckless v. Heckler,* 622 F.Supp. at 718. Rather, suc-

cess on the merits will "merely alter the valuation method which may lead to the eventual distribution of benefits." *Id.*[5] In this sense, plaintiff here, like those in *City of New York,* seeks to challenge the Secretary's use of erroneous criteria to determine eligibility for benefits under the Social Security statute. As a result, as in *City of New York,* plaintiff's claim here must be viewed as "collateral" to a substantive claim for benefits.

The Secretary cites to *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), and *Hironymous v. Bowen,* 800 F.2d 888 (9th Cir.1986), as supporting the conclusion that plaintiff's claim is not collateral. Both cases are plainly distinguishable. In each, the plaintiffs sought review of "isolated decisions of the Secretary," 800 F.2d at 892, "[r]ather than contesting a policy, rule or procedure or other action of the Secretary." *Id.*[6] In that very real sense, their claims were "inextricably intertwined with a claim for benefits," 800 F.2d at 894, and a waiver was inappropriate.

Here, in contrast, plaintiff contends that the legal standard under which the Secretary makes SSI benefit determinations is erroneous. To the extent that plaintiff may receive an increase in his benefits in the future following success in this suit, such an award would result from application of the proper standard rather than a determination that the Secretary has improperly denied him his individual benefits because of the misapplication of the proper standard.

I conclude that the claim satisfies the collaterality prong of the test for judicial waiver of exhaustion.

**5.** The Secretary seeks to dispute this characterization of plaintiff's complaint by pointing to language in the prayer for relief in which plaintiff requests an order that "defendant refund to plaintiff Jesse Cervantez and all class members all SSI benefits denied to them as a result of defendant's inclusion in the SSI income calculation of income which was garnished." Complaint at 10, para. 9. As this court has previously explained, however, "as an ordinary matter the plaintiff's prayer is not considered part of the complaint." *Greene v. Bowen,* 639 F.Supp. at 562. More importantly, this court need not grant plaintiff's ultimate prayer but may fashion

an appropriate remedy under the circumstances. *Id.* Thus, to the extent the Secretary's characterization of plaintiff's claim derives from matters contained in the prayer, it must be rejected.

**6.** In *Ringer,* plaintiff sought a determination that certain surgical procedures were covered by Medicaid, and in *Hironymous,* plaintiff contended that the Social Security Administration had misapplied an order of remand relative to his hearing.

### 2. Irreparable Harm

Plaintiff has also demonstrated that he will suffer irreparable harm if waiver of exhaustion is denied. His declaration reads as follows:

I was last able to work in January 1980. I survived on General Assistance and loans from friends until I finally got my SSI/SSDI in 1985. Then I could pay everyone back. I got my 1970 van out of storage and visited my family for a time. Finally, I was able to rent my own place. I lived in a rented trailer in a mobile home park for a couple years, then in an apartment. I was able to lead a normal life.

In April or May 1988 my checks were messed up. I was told that my SSI checks were being garnished. I lost my apartment and started sleeping in my van. It is a 16–foot van which has a mattress for me to sleep on. It has no cooking or shower or toilet facilities. I had no money to rent a space to put the van, even, so I have been parking it by the River at night.

In July 1988 I got about $600 from Social Security. I am not sure quite why, I thought my problems were solved. I rented a trailer space to park my van. Now I could use laundry facilities, showers, washroom, a clubhouse. I was close to bus services. I had an easier time keeping clean and well-groomed. A clean, respectable appearance is very important to me—I was brought up that way.

I only had a trailer space for two months—August and September 1988. I couldn't pay the rent when the garnishment continued and the SSI check was so small. Now I am again parking my van by the River to sleep.

Cervantez Declaration at 2–3. Simply put, plaintiff has shown that as a result of denial of benefits, he has lost his home, and risks a further deterioration of his already failing physical and mental health, for which he is entitled to SSDI benefits in the first place. Both the Supreme Court and the Ninth Circuit have recognized that a wrongful denial of benefits upon which a claimant "depend[s] for the very necessities of life cannot be fully remedied by the 'belated restoration of back benefits.'" *Schweiker v. Chilicky,* 487 U.S. ——, ——, 108 S.Ct. 2460, 2470, 101 L.Ed.2d 370, 385 (1988); *see also Leschniok v. Heckler,* 713 F.2d 520, 524 (9th Cir.1983) ("We fail to comprehend the Secretary's argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day").

The Secretary's suggestion that the harm plaintiff suffers must not be irreparable because others suffer the same injury cannot be entertained. As the Ninth Circuit observed in *Leschniok:*

We are not impressed with the Secretary's attempted justification: that no hardship exists here because "[plaintiffs] are in the same situation as the many others the Secretary terminates...." The Secretary's argument, that many wrongs will make a right, should be addressed to Congress.

713 F.2d at 524. The related contention that the harm must not be irreparable because plaintiff has endured under these conditions for more than a year is nothing short of cruel. It is simply indecent to suggest that poor, sick and hungry people do not suffer because they become acclimated to the conditions of poverty over time.

### 3. The Purpose of Exhaustion

It seems equally clear that the purposes of the exhaustion doctrine would not be furthered by requiring plaintiff to pursue his claim in the administrative forum rather than proceeding to a determination of the instant suit. The exhaustion doctrine is premised on the notion that allowing an administrative agency to apply its expertise to a problem, exercise its discretion, correct its own mistakes, and develop a factual record results in more accurate determinations and achieves judicial economy. *See, e.g., Doyle v. Secretary of Health and Human Services,* 848 F.2d 296, 300 (1st Cir.1988). None of these values would be served by requiring exhaustion in the matter at bar.

Plaintiff's lawsuit presents for review a single legal question regarding the validity of a particular regulation promulgated by the Secretary. Resolution of the matter does not require inquiry into either the proper interpretation of the regulation, or the manner in which it is being applied. Thus as plaintiff contends, there is no factual record to develop in the administrative process, nor would the Secretary's administrative expertise assist in resolution of the legal question tendered to the court. The Secretary's suggestion that administrative review is necessary to afford the agency an opportunity to "correct any errors" it may have made in determining plaintiff's claim cannot be credited where, as here, the Secretary's position regarding the validity of the regulation is firm. Given the Secretary's vigorous defense of the legality of the regulation, it stretches credulity to suggest that the Secretary would reverse his position on the validity of the regulation at issue in this action at the behest of a single claimant for benefits in the course of an administrative proceeding. Given the practicality standard enunciated in *City of New York*, this court can say with confidence that it would serve no purpose, except delay, to require plaintiff to endure a lengthy and ultimately fruitless series of administrative appeals.

#### 4. Conclusion

Plaintiff has demonstrated that he is entitled to judicial waiver of the exhaustion requirement provided in 42 U.S.C.A. § 405(g). Accordingly, jurisdiction over plaintiff's claim is vested in this court under 42 U.S.C.A. § 405(g). For this reason, the Secretary's motion to dismiss on this ground is hereby DENIED.[7]

### III

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff seeks an order certifying a class composed of "all persons residing in the Ninth Federal Judicial Circuit whose SSI benefits have been, or will be denied, terminated or reduced because of the Secretary's policy of counting unearned income that is garnished as if that income were in fact received." Plaintiff's Motion for Class Certification. While I believe class certification is appropriate, plaintiff's definition of that class is not.

Under Rule 23(a), to justify class certification plaintiff must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative party will fairly and adequately protect the interest of the class. Finally, plaintiff must demonstrate that one of the requirements of Federal Rule of Civil Procedure 23(b) is satisfied. It is apparent that plaintiff's motion should be granted.

Defendant admits that in the Ninth Circuit more than fifty (50) people receiving SSI benefits are being garnished. Given their geographic dispersion and limited resources, the number suffices. Since plaintiff's lawsuit presents a single legal question which is common to all members of the proposed class, whether the challenged regulation violates Title XVI, the class claim may be resolved without reference to the particular facts and circumstances unique to each class member's claim for benefits. For the same reason, plaintiff Cervantez' claim is typical of those of the class. Finally, plaintiff is an adequate representative of the proposed class. This requirement, which focuses primarily on the competence of counsel, is satisfied here where plaintiff is represented by experienced class counsel who have expertise in government benefits cases and in representing the poor.

**7.** Plaintiff's alternate claim for jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, will not lie. Mandamus is not appropriate where an adequate remedy is available to the plaintiff. *Kennecott Copper Corp., Nevada Mines v. Costle,* 572 F.2d 1349, 1356 (9th Cir.1978). In view of the conclusion that jurisdiction over plaintiff's claims is available under 42 U.S.C.A. § 405(g), there is an adequate remedy available. *See City of New York v. Heckler,* 742 F.2d 729 (2d Cir. 1984), *aff'd sub nom. City of New York v. Bowen,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986).

Similarly, plaintiff's complaint easily satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2), which provides that class treatment is proper where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole." The essence of plaintiff's claim is a challenge to the validity of a regulation promulgated by the Secretary.

■ The more difficult issue raised by this motion is the proper definition of the class. Plaintiff's proposed class definition contemplates inclusion of persons who have in the past either been denied SSI benefits, or whose SSI benefits have been reduced or terminated following application of the challenged regulation since its enactment in 1982. Certification of a class of this breadth is improper since it seeks to include persons whose claims are beyond this court's jurisdiction.

As I have explained above, the Social Security Act confers jurisdiction on the district courts over claims brought within 60 days after the plaintiff has received a "final decision" from the Secretary. 42 U.S. C.A. § 405(g) (West Supp.1983); *see* discussion at section II(B)(1), *infra.* To recapitulate, to satisfy the final decision requirement, a claimant must have presented a claim to the Secretary, and exhausted his or her administrative remedies under section 405(g), or qualify for waiver of the exhaustion requirement. *Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2031–32, 90 L.Ed.2d 462 (1986). Because the presentment of the final decision is jurisdictional and cannot be waived, the class may not include persons who have not sought administrative review of the denial or reduction of benefits suffered. The Ninth Circuit has held that waiver of the exhaustion requirement constitutes a "final decision" for purposes of judicial review, and thus, the 60–day statute begins to run at that time. *Lopez v. Heckler,* 725 F.2d 1489, 1505 (9th Cir.), *vacated on other grounds, sub nom. Heckler v. Lopez,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694

(1984). In sum, the court only has jurisdiction over the claims of those who have sought administrative review of a denial or reduction of benefits pursuant to 20 C.F.R. § 416.1123(b)(2), and who have either received a final decision on such a claim within the 60 days preceding the filing of this lawsuit, or whose claims were pending before the Secretary within this period.

Plaintiff does not dispute that the limitations period applies but, relying on the Supreme Court's ruling in *Bowen v. City of New York, supra,* contends that the 60–day statute should be equitably tolled with respect to the class claims. I cannot agree.

In *City of New York,* the Secretary's jurisdictional argument premised on the 60–day rule was rejected and the Court concluded that tolling was warranted. There, however, the policy challenged was a covert one, and the Government's secretive conduct prevented plaintiffs from knowing that their rights had been violated. 476 U.S. at 481, 106 S.Ct. at 2030–31. In contrast, in *Pittston Coal Group v. Sebben,* 488 U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), plaintiffs sought review of the denial of benefits under the Black Lung Reform Act pursuant to a published regulation promulgated by the Secretary of Labor. Although finding the regulation invalid, the Supreme Court reversed a decision of the Eighth Circuit under which the Secretary was required to readjudicate claims that had become final more than 60 days before the lawsuit challenging the regulation was filed. The Court explained that the equitable tolling doctrine applied in *City of New York* had no bearing on the dispute before it, noting that

> The agency action here was not taken pursuant to a secret, internal policy, but under a regulation that was published for all to see. If the respondents wished to challenge it they should have done so when their cases were decided.

488 U.S. at ——, 109 S.Ct. at 425, 102 L.Ed.2d at 426.

The regulation at bar was published in 1982, and thus the instant action is indistinguishable from *Sebben.* Plaintiff seeks to distinguish this case from *Sebben* premised

on poverty and illiteracy. While the argument is appealing, it is unavailing. The notion that everyone is charged with knowledge of what is published in the Federal Register is clearly not based on a belief as to its literal truth; rather, it is a legal fiction adopted to provide for the efficient administration of the Government.

Plaintiff's motion for class certification is hereby GRANTED. The class is defined to include:

All persons residing in the Ninth Federal Judicial Circuit whose SSI benefits have been denied, terminated or reduced because of the Secretary's policy of counting unearned income that is garnished as if that income were in fact received, who have filed an administrative claim with the Secretary, and have (1) received a final decision from the Secretary within the 60 days prior to the filing of plaintiff's complaint, or (2) whose administrative claim was pending within the 60 days prior to the filing of plaintiff's complaint, and

All persons residing in the Ninth Federal Judicial Circuit whose SSI benefits will be denied, terminated or reduced because of the Secretary's policy of counting unearned income that is garnished as if the income were in fact received.

## IV

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I now turn to the substance of plaintiff's claim.

### A. *Standards*

I have repeatedly noted the standards applicable to the resolution of motions for summary judgment, *see Bhan v. NME Hospitals, Inc.,* 669 F.Supp. 998 (E.D.Cal.1987), and no purpose is served in the instant matter in setting them out at length.

The issue presented is the validity of 20 C.F.R. § 416.1123(b)(2), which permits the inclusion of amounts withheld because of a garnishment as unearned income, for purposes of determining SSI eligibility and calculating benefits thereunder. Plaintiff contends that by permitting the Secretary to count as unearned income amounts that have been garnished from the claimant's other sources of income the challenged regulation violates section 1382a(a)(2) of Title XVI of the Social Security Act, which defines "income" for purposes of the SSI program. Because there are no contested issues of material fact, resolution of the instant motion turns on the proper interpretation of 42 U.S.C.A. § 1382a(a)(2), a pure question of law.

### B. *General Principles of Statutory Construction*

In cases involving a challenge to an administrative agency's interpretation of a federal statute which the agency administers, the task of the district court is to construe the underlying statute. The Supreme Court has taught that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), *quoting Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, "[i]f a court employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and it must be given effect." *Id.* If, however, the court determines that Congress has not directly addressed the precise question at issue, the court must determine whether the agency's regulation is based on a permissible construction of the statute. *Id.* at 445 n. 29, 107 S.Ct. at 1220 n. 29.

As I have recently explained, the first step a district court must take in resolving a matter turning on statutory construction is to determine if there is binding authority construing the statute. *Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal.1988), *citing Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982), and *Brown v. Baden,* 815 F.2d 575, 577 (9th Cir.) (per curiam), *cert. denied sub nom.,*

*Real v. Yayman,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). If no such authority exists, the court must then undertake an independent analysis of the statute to discover its meaning, following a procedure I have repeatedly explored. *See Tello,* 677 F.Supp. at 1441; *Sacramento Regional County Sanitation Dist. v. Thomas,* 668 F.Supp. 1427, 1431 (E.D.Cal. 1987); *Catholic Social Servs., Inc. v. Meese,* 664 F.Supp. 1378, 1382 (E.D.Cal. 1987).

As I have previously explained, in the absence of binding authority, the court must first apply the plain meaning rule. Where the language is clear and unambiguous, such language must ordinarily be regarded as conclusive. *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983). Where the language is plain, no further construction of the statute is required, for there is nothing to construe. *Tello,* 677 F.Supp. at 1441.

In analyzing a statute, the court is not prohibited from examining the legislative history for the purpose of determining whether there is a "clearly expressed legislative intention" which contradicts or alters the plain language of the statute. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12. Very strong evidence, if not explicit language, in the legislative history is necessary to overcome the plain meaning to be drawn from statutory language, however. *In re Seidel,* 752 F.2d 1382, 1385 (9th Cir.1985). If, after application of the plain meaning rule and examination of legislative history the statute is ambiguous, resort may be had to other extrinsic aids of statutory construction. *Catholic Social Servs.,* 664 F.Supp. at 1382–83.

■ Although the interpretation of a statute by the agency charged with its administration is one of the traditional tools employed to determine congressional intent, this tool, as an extrinsic aid to interpretation, is secondary to application of the plain meaning rule, examination of legislative history, and other tools of critical textual examination. *Catholic Social Servs.,*

664 F.Supp. at 1383. Moreover, where as here, "an agency interpretation of a statutory provision ... conflicts with the agency's earlier interpretation [it] is 'entitled to considerably less deference' than a consistently held agency view." *I.N.S. v. Cardoza–Fonseca,* 480 U.S. at 446 n. 30, 107 S.Ct. at 1221 n. 30, *citing Watt v. Alaska,* 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981).

It is in light of these general principles that I must examine the proper meaning of 42 U.S.C.A. § 1382a(a)(2).

C. *Is the Regulation Consistent With the Statute?*

■ Plaintiff's motion is supported by two essential arguments. First, he contends that 20 C.F.R. § 416.1123(b)(2) violates controlling Ninth Circuit precedent which has defined "unearned income" to include only items of value which are actually available to the SSI recipient. Failing that, he argues that the regulation conflicts with the plain language of the statute which limits the amount of unearned income derived from other sources to those "payments received" and the congressional intent of ensuring subsistence income. The Secretary rejects this interpretation of Ninth Circuit law, and, relying on a line of out-of-circuit decisions, argues that Congress did not intend to impose an "actual receipt" requirement on the definition of "unearned income." I will address each of these arguments in turn.

1. Binding Precedent

Although plaintiff's challenge to the garnishment regulation appears to present a question of first impression, on several occasions the Ninth Circuit has addressed the issue of the types of unearned income that may properly be counted in determining SSI eligibility and calculating benefits under the Social Security Act. *See Whaley v. Schweiker,* 663 F.2d 871 (9th Cir.1981); *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982); and *Dept. of Health, State of Cal. v. Secretary of HHS,* 823 F.2d 323 (9th Cir.1987) ("DHS"). In each of these cases, the circuit has rejected arguments

by the Secretary that money which could in some sense be said to be attributable to an applicant, but which was in fact designated for other uses, was "countable" unearned income under the statute. These cases require that the challenged regulation be invalidated.

In *Whaley*, the question presented was whether increased pension benefits paid to a disabled veteran for the support of his minor children under the Veteran's Act constituted income to the veteran so as to disqualify him from receiving supplemental income benefits under section 1612 of Title XVI of the Social Security Act. 663 F.2d at 873. There, plaintiff qualified as a benefit recipient under both Title II and Title XVI of the Social Security Act, and also qualified for a pension as a veteran with a non-service connected disability, under the Veteran's Act, 38 U.S.C. § 521. In addition, plaintiff's children were eligible for dependent's benefits under the Veteran's Act. *Id.* The Veteran's Administration combined plaintiff's personal benefits with his children's dependent's benefits into a single check, payable to plaintiff. *Id.* at 874.

In calculating plaintiff's SSI benefits, the Secretary included as countable income the amount of the dependent's benefits included in the check with the result that he was deemed no longer eligible for SSI benefits. The Secretary argued that because the benefits were delivered to plaintiff in one unapportioned check, the entire amount was attributable to him as income under 42 U.S.C.A. § 1382a(a)(2)(B) and its governing regulations. This argument was predicated on the Secretary's view that, as the recipient of the check, plaintiff was free to use the money as he pleased, and thus could apply the pension to his own needs rather than spend it to support his dependents. *Id.* at 874. Accordingly, the Secretary argued that the money was "actually available" within the meaning of the Social Security Act.

The Ninth Circuit rejected the Secretary's method of calculation, commenting that it was "without statutory support" and represented "a complete vitiation of

the purpose supporting both of these statutes—the intent to help families like Whaley's to maintain minimally adequate income levels." *Id.* at 874. The court concluded that the portion of increased pension benefits paid to a veteran for the support of his dependent children did not constitute income to the veteran for the purpose of computing SSI benefits. *Id.* at 875.

Following *Whaley*, in *Summy*, the court addressed the issue of whether sums received from the Veteran's Administration in reimbursement for certain extraordinary medical expenses were properly counted as unearned income in computing a claimant's SSI benefits under 42 U.S.C.A. § 1382a(a)(2)(B). The Secretary argued that it was proper to treat the amount of reimbursement as income since VA pensions are income for purposes of computing SSI benefits and the VA pension included the medical expense reimbursement. 688 F.2d at 1234. The court noted that the funds could be treated either as an augmentation of the pension with "funds which when received were spendable as any other dollar of the pension" or instead as a reimbursement "for expenditures previously made over which there was little control and which could not have been used to meet" the plaintiff's basic needs. *Id.* at 1235. The circuit, relying on *Whaley*, concluded that the latter characterization would "best advance ... the purposes of the SSI program," *id.*, and accordingly, held that the funds could not be included in countable income.

Finally, in *DHS*, the court again addressed the issue of the proper definition of countable income for purposes of calculating federal benefits, this time in the context of the Medicaid statute. In *DHS*, California appealed a decision of the Secretary rejecting, *inter alia*, the state's proposal to treat court-ordered spousal and child support payments as "unavailable" to Medicaid recipients for purposes of benefit determinations. 823 F.2d at 327. The circuit reversed the Secretary. It explained that *Whaley* compelled the conclusion that "income that a Medicaid recipient uses to pay court ordered child support or alimony

cannot be used to reduce the recipient's Medicaid benefits." *Id.* at 328.

Although the court in *DHS* rejected the Secretary's contention that the states were bound under the Medicaid Act to follow SSI eligibility requirements, Judge Beezer was careful to observe that even if SSI regulations were controlling, such regulations would undermine, rather than support, the Secretary's position that the statute contemplates the counting of income earmarked for child and spousal support in calculating federal benefits.

> A person who receives alimony or child support may in many cases also receive cash assistance under SSI or AFDC. When such a person applies for cash assistance, federal law requires that child support and alimony be treated as the unearned income of the *recipient* of the support payment. *See* 42 U.S.C. § 1328a(a)(2)(E); 20 C.F.R. § 416.1121(b). Curiously, the Secretary asserts that the income should be treated as also available to the payor. Thus, the Secretary seeks to count the income twice. Clearly, the income is available to only one person, either the payor or the payee. Congress has determined that the income should be attributed to the payee. The Secretary has not advised us why we should ignore relevant federal law and we refuse to do so.

823 F.2d at 328.

In sum, the Ninth Circuit has firmly concluded that the definition of "unearned income" in section 1382a must be interpreted to include only "items of value which [are] actually available to meet the beneficiaries' basic needs." *Summy v. Schweiker*, 688 F.2d at 1235.[8] The challenged regulation thus contravenes the circuit's actual availability principal by permitting the Secretary to include "more than the [recipient] actually receives if amounts are withheld from unearned income because of a garnishment." 20 C.F.R. § 416.1123(b)(2).

The impermissible effect of this regulation is amply demonstrated by plaintiff Cervantez' benefits history. Plaintiff is technically entitled to monthly Title II disability benefits in the amount of $468. Because these benefits are in part based on Mr. Cervantez' former employment, $369 of the total amount is being withheld by the SSA pursuant to a garnishment order under 42 U.S.C. § 659. Under the Secretary's regulation, plaintiff's SSI benefit is calculated as if he were receiving the full Title II benefit, and thus is reduced dollar-for-dollar by the amounts of the garnishment, even though he does not have access to those funds. Thus, plaintiff has been forced to survive on $300 per month in cash, which is less than half of the total amount he would receive were the garnished income not counted. Although in an abstract sense, plaintiff benefits from this arrangement to the extent that the child support arrearage is diminished by the amount of the garnishment each month, the benefit of debt reduction does not satisfy any of the basic needs of food, shelter or clothing for which SSI benefits are designated.

This case is more compelling than *Whaley*. There, the funds which the circuit held could not be counted by the Secretary for purposes of establishing eligibility for federal benefits were acknowledged to be accessible to the applicant, although they had been designated for other uses. In *Whaley*, the plaintiff was in actual possession of the funds but had a moral obligation as a parent to use the money to support his children. If funds that are merely earmarked for child support, but which are in fact in the possession of a federal benefits applicant or recipient cannot be considered "available income" within the meaning of the statute, it must follow that funds garnished to satisfy a child support judgment cannot be considered available income.

The Secretary argues that under an "actual availability" standard, the *Whaley* court would have been compelled to attribute the entire amount of the benefits

---

**8.** This definition derives directly from another of the Secretary's own regulations which defines "income" as "the receipt by an individual of any property or service which he can apply, either directly or by sale or conversion, to meeting his basic needs." 20 C.F.R. § 416.120(c)(2).

check to Mr. Whaley because he was in actual possession of the money. The argument will not lie. *Whaley* stands for the proposition that the Secretary may only count funds which an SSI applicant can actually use to provide for his or her basic needs in making the SSI eligibility determination. Indeed, the position which the Secretary now seeks to attribute to plaintiff was advanced by the Secretary himself in *Whaley* and was rejected therein. As the Ninth Circuit has recognized, the situation is even clearer where, rather than a moral obligation, court-ordered child support payments are in issue. As the *DHS* court observed:

> Unlike the situation in *Whaley,* a court has several sanctions it may impose if a person defaults on support payments (citations omitted). Thus, an even stronger case can be made that income earmarked for support payments is truly unavailable.

*DHS,* 823 F.2d at 328 n. 4.

The Secretary argues that the discussion of federal standards in *DHS* is dicta and should be disregarded. While the defendant's argument is technically correct, it ignores the fact that *DHS* relied on *Whaley,* an SSI case, and thus provides powerful support for the contention that the department may not count as "unearned income" amounts garnished from an SSI recipient's other sources of income to satisfy a child support arrearage pursuant to 42 U.S.C. § 1382(a)(2)(B). Moreover, the *DHS* court's argument is highly persuasive. If, under *Whaley,* countable income includes only that which applicants or recipients of SSI benefits can use to provide for their own basic needs, sums which must be used to provide for the basic needs of others simply cannot be counted as available to them. Put simply, if money is used to provide for the basic needs of an applicant or recipient's dependents, whether voluntarily, subject to a court order, or pursuant to a garnishment, it cannot be used to meet his or her basic needs as well. Moreover, as Judge Beezer noted in *DHS,* the statute explicitly provides that such payments are to be included in the unearned income of the recipient of the support payment, and it

follows that the same funds cannot also be attributed to the person making the payment. The income can only be counted once for purposes of determining SSI eligibility and benefits, and Congress has determined that such payments are to be attributed to the payee under 42 U.S.C. § 1382a(a)(2)(E).

For all of the reasons explained above, I find that 20 C.F.R. § 416.1123(b)(2) contravenes the definition of "unearned income" under 42 U.S.C. § 1382a(a)(2) as interpreted by controlling Ninth Circuit case law. Accordingly, plaintiff has established an entitlement to judgment as a matter of law.

### 2. Plain Meaning

Even if this matter were not disposed of by application of controlling Ninth Circuit precedent, the same result is compelled by an analysis of the plain meaning of the statute.

Unearned income, for SSI purposes, is defined by the Social Security Act as:

(A) support and maintenance furnished in cash or kind; ...

(B) any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions, and unemployment insurance benefits;

(C) prizes and awards;

(D) payments to the individual occasioned by the death of another person, to the extent that the total of such payments exceeds the amount expended by such individual for purposes of the deceased person's last illness and burial;

(E) support and alimony payments, and ... gifts (cash or otherwise) and inheritances; and

(F) rents, dividends, interest, and royalties.

42 U.S.C.A. § 1382a(a)(2) (West Supp.1989). Plaintiff contends, and I agree, that the term "received" employed in subpart (B) of this section indicates a requirement of actual availability.

Turning first to the language of the statute, I note that the word "received" as defined by Webster's Third International Dictionary means "to take possession or delivery of." Thus, construing the statutory language according to its ordinary, common meaning, *see Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir.1985), subpart (B) of the statute must be interpreted to mean that payments of the type described will only be counted as unearned income for SSI purposes when the recipient has taken possession of the funds.

The Secretary urges that I follow a line of out-of-circuit cases which have held that Congress used the word "received" in subpart B of the statute purely as a grammatical link between the word "payments" and the list of benefits that follows, and did not intend to impose a requirement of "receipt" on subsection (a)(2)(B) payments for purposes of the counting rule. *Lyon v. Bowen*, 802 F.2d 794, 798 (5th Cir.1986), *accord Szlosek v. Secretary of Health and Human Services*, 861 F.2d 13 (1st Cir.1988), *aff'g and adopting* 674 F.Supp. 944 (D.Mass.1987); *Robinson v. Bowen*, 828 F.2d 71 (2d Cir.1987), *aff'g and adopting* 650 F.Supp. 1495 (S.D.N.Y.1987); and *Healea v. Bowen*, 871 F.2d 48 (7th Cir. 1988).[9] This interpretation of the statutory language is based on the *Lyon* court's observation that Congress did not employ similar language in the other subsections of the statute. The court reasoned: "[h]ad Congress intended to impose a condition of receipt on subsection (a)(2)(B) payments ..., it would have imposed such a requirement in other subsections as well." *Lyon*, 802 F.2d at 798. With all due respect, these cases will not be followed; as I explain below, the analysis in *Lyon* contravenes both well-settled principles of statutory construction and the statutory scheme itself.

The Supreme Court has repeatedly explained that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. at 432, 107 S.Ct. at 1213. Additionally, it is a bedrock principle of statutory construction that the court's duty in interpreting a statute is to give effect to every word used. *Simpson v. Hegstrom*, 873 F.2d 1294, 1298 (9th Cir. 1988). The analysis articulated in *Lyon* and its progeny turns these canons of statutory construction on their heads by concluding that had Congress intended the word "received" to have its ordinary meaning, it would have used similar language in other subsections of the statute.[10]

Moreover, analysis of the statutory provision as a whole indicates that Congress contemplated that the items of value described in the other subsections of the statute should not be counted by the Social Security Administration as unearned income unless the claimant actually receives something that can be used to provide for his or her basic needs. For example, subsection (A) refers to "support and maintenance furnished to the claimant in cash or in kind." Similar to its choice of the word "received" in subsection (B), Congress' use of the word "furnished" in subsection (A) connotes a requirement of actual receipt. Moreover, subsection (A) sets forth a complex method for approximating the actual value of in-kind benefits received by the claimant for the purpose of calculating SSI eligibility and benefits. The level of attention paid to determining the actual value received by the claimant required by this part of the statute is strong indicia of a congressional intent that items of value which do not contribute to the claimant's subsistence may not be counted as unearned income under section 1382a. Similarly, in subsection (D), the statute refers to "payments to the individual occasioned

---

**9.** I do not pause to examine the implication of the Secretary's suggestion in terms of the doctrine of binding versus persuasive authority since, as I explain in the text, *Lyon* and its progeny are simply not persuasive.

**10.** Neither *Lyon* nor the courts which have followed it, nor the Secretary in urging *Lyon* on this court, nor this court's independent research have revealed any legislative history which bears on Congress' use of the word "received."

by death" but expressly excludes amounts attributable to funeral or burial expenses, or which are required to pay debts occasioned by the decedent's illness. Again, by excluding items of this character from the SSI eligibility calculation, Congress has expressed an intention to count as unearned income only items of value which are available to provide for the recipient's basic necessities. The remaining subsections of the statute refer to prizes and awards, support and alimony payments, gifts, inheritances, rents, dividends, interest and royalties. Although Congress did not use any explicit language of receipt in describing these categories of unearned income, in the ordinary course of events these items are not generally of the type that are constructively received. In the final analysis, the statutory provision defining "unearned income" amounts to a comprehensive list of possible sources of value that an SSI recipient might come into possession of that could be used to satisfy his or her basic needs. Viewed in this overall context, construing the word "received" in subsection (B) according to its ordinary, common sense meaning seems the most reasonable course.

Finally, the Secretary contends that plaintiff's proffered construction of the statute would have the impermissible effect of compelling the Secretary to act in excess of his powers by requiring him to refrain from counting items of income that are not included in the enumerated statutory exclusions. Again, binding authority requires me to reject the argument. The Ninth Circuit has squarely held that the list of excludable items contained in the statute is not exhaustive. *Grunfeder v. Heckler,* 748 F.2d 503 (9th Cir.1984) (rejects Secretary's contention that German reparations payments are countable income because not specifically listed as statutory exclusion).

I conclude that absent any reason to deviate from the plain language of the statute, by inserting the word "received" in subsection B of the statute, Congress intended to impose a requirement of actual receipt for purposes of defining "countable income." Had Congress intended to in-

clude benefits both actually and constructively received within the definition of "unearned income" in this section of the statute, as the Secretary suggests, it was free to use language to that effect. *Compare Philbrook v. Glodgett,* 421 U.S. 707, 719, 95 S.Ct. 1893, 1901, 44 L.Ed.2d 525 (1975).

## V

## CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED;

2. Plaintiff's motion for class certification is GRANTED in accordance with the class definition described in section III, *infra;*

3. Plaintiff's motion for summary judgment is hereby GRANTED;

4. The parties shall provide the court with proposed orders relative to \an appropriate remedy within fifteen (15) days of the effective date of this order.

IT IS SO ORDERED.